### In re J.J.P., Juvenile

[719 A.2d 394]

No. 97-500

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Cashman, D.J., Specially Assigned**

Opinion Filed July 2, 1998

*Michael Rose*, St. Albans, for Appellant.

*William H. Sorrell*, Attorney General, Montpelier, and *Barbara L. Crippen*, Assistant Attorney General, Waterbury, for Appellee SRS.

*Robert Appel*, Defender General, and *William A. Nelson* and *Henry Hinton*, Appellate Attorneys, Montpelier, for Appellee Juvenile.

**Johnson, J.** Mother appeals from a family court order that terminated her parental rights (TPR) to J.J.P. at the initial disposition. She argues that the court erred by failing to vacate the merits determination — that J.J.P. was a child in need of care and supervision (CHINS) — because the prosecutor had a conflict of interest. Without a merits determination, she maintains that the TPR order is invalid. Mother also claims that the TPR order is not supported by any evidence of current circumstances. We affirm.

Mother has eight children; J.J.P., the youngest child, is three years old. Mother's seven other children had all been removed from

mother's care by the end of 1993.* In 1995, mother fled Vermont after she was served with a citation to appear in district court to respond to charges of sexually assaulting her two older sons. J.J.P. was born June 30, 1995. Mother was taken into custody in Florida on July 25, 1995, and J.J.P. was taken into custody six days later when he was only one month old. Mother was extradited to Vermont and, by the end of August, J.J.P. was transferred to Vermont and placed in foster care with a couple who had adopted the next youngest child born to mother, J.J.P.'s half-sister. SRS petitioned for a determination that J.J.P. was CHINS.

On April 15, 1996, a jury convicted mother on one count of sexual assault against her son but acquitted her on the other three counts; she was sentenced to twenty-five to thirty-eight years. In July 1996, the court granted the CHINS petition based on mother's sexual abuse of her children and on a record of chronic parental unfitness that had resulted in mother's seven other children being removed from her home. In December 1996, father voluntarily relinquished his parental rights. In March 1997, mother moved to vacate the CHINS determination on the ground that the prosecutor was the wife and law partner of an attorney who had represented mother in an earlier CHINS proceeding, and that, therefore, the merits proceedings were tainted by the prosecutor's conflict of interest.

Following a hearing, the court agreed that the merits proceeding was tainted by the conflict of interest; however, the court concluded that vacating the merits order was inappropriate because there was no evidence of misuse of confidential information and because the delay would have a detrimental impact on J.J.P., who had already been in state custody for twenty months. Nonetheless, the court required the State to prove its case for TPR by clear and convincing evidence without relying on findings or conclusions made at the merits. This remedy, the court concluded, eliminates the possibility of any prejudice that may have tainted the merits proceeding from affecting the outcome of the TPR proceeding.

On October 24, 1997, following a three-day evidentiary hearing, the court issued an order terminating the residual parental rights of mother. The court concluded that the order was justified based on the evidence of physical, sexual and emotional abuse and physical, medical and nutritional neglect of her other seven children; even with

---

*Three of the children have been adopted, two remain in SRS custody and two have reached the age of majority.

the assistance of social services over a long period, she had been unable to appropriately parent the children. Moreover, mother had no relationship with J.J.P.; she had had no contact with J.J.P. since she was taken into custody in Florida when J.J.P. was less than one month old. J.J.P. had been living with the same foster parents for over two years, and these parents wished to adopt him. Thus, the court concluded that it was in J.J.P.'s best interests to terminate mother's residual parental rights and free J.J.P. for adoption.

On October 31, 1997, this Court reversed mother's jury conviction for sexual assault and entered a judgment of acquittal. See *State v. Crepeault*, 167 Vt. 209, 214, 704 A.2d 778, 782 (1997). Although the reversal was based on other grounds, we discussed the prosecutor's conflict of interest and concluded that "it is apparent that the prosecutor's conduct here tainted the proceedings and the judgment." *Id.* at 218, 704 A.2d at 784. We did not reach the question of whether reversal would have been compelled by the conflict had there been no other ground compelling us to acquit the defendant.

Mother appeals from the TPR order, arguing first that the trial court erred by failing to vacate the merits order based on the prosecutor's conflict of interest. She relies on criminal cases in which the appellate court has reversed a conviction because the prosecutor had previously represented the defendant in a substantially related matter. See, e.g., *Reaves v. State*, 574 So. 2d 105 (Fla. 1991). The issue here, however, is whether reversal of a CHINS determination is required. In a juvenile proceeding, "our main goal is to protect the interests of the child." *In re R.B.*, 152 Vt. 415, 423, 566 A.2d 1310, 1314 (1989). Although we recognize the importance of mother's rights, we will not elevate those rights over those of the child if it could be detrimental to the child. See *id.* at 423-24, 566 A.2d at 1314. Thus, in fashioning the appropriate remedy, it is appropriate to consider all the facts and circumstances of the particular case.

■ In this case, the court held a hearing on the issue to determine whether the merits hearing was tainted, and if so, what would be the appropriate remedy. Although the court concluded that the prosecutor had a conflict that affected the integrity of the proceeding, it took all facts and circumstances into consideration in determining whether to vacate the merits order. In short, the court concluded that there was no evidence that there was any actual misuse of confidential information, and further delay of the juvenile proceeding would have had a detrimental effect on J.J.P., who had had no contact with either parent for the last twenty months of his twenty-one month life.

Accordingly, the court held that vacating the merits order would not serve the best interests of J.J.P. and would be disproportionate to the actual harm caused by the conflict here. Further, the court held that, in seeking a TPR, the State could not rely on the findings and conclusions made in the merits order. We conclude that this remedy eliminated the possibility of any prejudice to mother at the merits affecting the outcome of the TPR. The court properly weighed the competing interests, and its remedy was appropriate under the circumstances of this case. We find no error.

Mother relies on criminal cases such as *Reaves*, in which the court held that "a conviction must be reversed if the trial court denies a *pretrial* defense motion to disqualify a prosecutor who previously has defended the defendant in any criminal matter that involved or likely involved confidential communications with the same client." 574 So. 2d at 107. Failure to make the motion before trial begins, however, is "deemed a waiver unless the defense can demonstrate that due diligence would not have disclosed the facts surrounding the prosecutor's prior involvement with the defendant." *Id.* Even if we considered a CHINS proceeding analogous to a criminal case, under the *Reaves* rule, mother's motion is untimely.

Mother's reliance on *State v. Hursey*, 861 P.2d 615 (Ariz. 1993), is also misplaced. *Hursey* reversed a conviction based on the prosecutor's conflict, although the conflict was not raised until a post-conviction proceeding, because the State joined in the defendant's request for a new trial. See *id.* at 619. Courts in other jurisdictions are split on whether a conviction must be reversed based on a prosecutor's conflict of interest that is not raised until after trial. See generally, Annotation, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused*, 42 A.L.R.5th 581 §§ 19-23 (1996). We need not decide this issue in this case because we conclude that a CHINS order, where the child's interests are paramount, is not analogous to a criminal conviction. Cf. *In re R.S.*, 143 Vt. 565, 571, 469 A.2d 751, 755 (1983) (affirming CHINS determination by rejecting analogy to criminal case because juvenile proceedings are protective, not penal).

Second, mother contends that the court erred by relying on mother's circumstances four years prior to the TPR order. She maintains that the order is based on her abuse and neglect of her other children, which ended in 1993 when the last of them were removed from her home. In contrast, she claims, there was no evidence that J.J.P. was abused or neglected during the time that

mother cared for him. Thus, she argues that there was no evidence regarding her current circumstances, which supported the TPR order.

■ The court may rely on evidence of a parent's treatment of siblings to show a pattern of abuse and neglect, and a general inability to protect the children from harm. See *E.J.R. v. Young*, 162 Vt. 219, 224, 646 A.2d 1284, 1287 (1994). The evidence of mother's abuse and neglect of her first seven children clearly established a pattern of abuse and neglect relevant to her ability to properly care for J.J.P. Moreover, the evidence showed that, despite years of services aimed at improving her parenting, none of the seven children removed from her home were ever returned to her care. Further, the court found that, currently, mother denied that she was ever abusive to any of her children and that she had allowed her children to have unsupervised contact with a known sex offender. She minimized her neglect of the children and the condition of her home and denied responsibility for the children's absence from school. Although mother had recently enrolled in a parenting class, her failure to recognize her responsibility for the conditions that led to the other children being removed from her home made it clear that she would be unable to resume parental care of J.J.P. in a reasonable time. See *In re B.M.*, 165 Vt. 331, 336, 682 A.2d 477, 480 (1996) (critical factor in TPR is whether natural parent will be able to resume parental duties within reasonable period of time).

■ Moreover, the court considered the current circumstances of mother and J.J.P. Specifically, the court found that mother has no relationship with J.J.P. She has had no contact with J.J.P. since July 1995, and the child has developed a close relationship with his foster parents and half sister over a long period. See *id.* at 341-42, 682 A.2d at 482-83 (where father never had meaningful bond with child, and child has strong, positive relationship with foster parents and foster brother, court correctly concluded that father would not be able to resume parental duties in reasonable time, despite significant improvement in parenting ability). We conclude that there was sufficient evidence of mother's current circumstances to support the TPR order.

*Affirmed.*