*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2015-155

JULY TERM, 2015

In re B.S., Juvenile          }    APPEALED FROM:
} 
}    Superior Court, Windham Unit,
}    Family Division
} 
}    DOCKET NO. 1-1-14 Wmjv

                                        Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Mother and father appeal separately from a family court order terminating their parental rights to the minor B.S. Father contends the court erroneously: (1) shifted the burden to parents to prove that they were able to resume parental responsibilities; (2) concluded that father could not resume parental responsibilities within a reasonable time based upon unsupported evidence and findings; and (3) admitted irrelevant, hearsay evidence. Mother joins in several of father's claims. We affirm.

This is the second appeal to reach the Court in this matter. In the first, In re B.S., No. 2014-272, 2014 WL 7238222 (Vt. Dec. 12, 2014) (unpub. mem.), we affirmed an adjudication of the child as a child in need of supervision (CHINS) in July 2014 based on the trial court's finding of "overwhelming" medical evidence that B.S. had been subjected to abuse, and a preponderance of the evidence that father was the source of the abuse. Id. at * 2. The injuries, consisting of a fractured left tibia and two compression fractures of the lower spine, were reported to the Department for Children and Families (DCF) when mother brought the child to the emergency room in January 2014; he was three months old at the time. In addition to the finding of abuse, the trial court further found that mother's failure to discover the abuse and intervene to protect the child "amounted to a lack of proper parental care by clear and convincing evidence." Id. Following the report of abuse and an emergency care order, B.S. was placed in a high-risk foster home, where he since remained.

In March 2014, the State filed an initial case plan setting forth an array of services and requirements for mother and father. Both parents were required to attend all visitations with B.S., fully engage in parenting education, undergo a mental-health evaluation and follow-up counseling, participate in a substance-abuse evaluation and counseling, remain clean and sober, and maintain housing that is "free from domestic violence and substances." A follow-up plan filed in August 2014 contained the same services and expectations, and identified a permanency goal of termination of parental rights. A petition to terminate parental rights was filed later that month.

A two-day evidentiary hearing on the petition was held in January and February 2015, and the court issued a ruling in March 2015. As to mother, the court credited the testimony of

both a drug-abuse counselor and a clinical psychologist, Dr. Gabriel, that mother's lengthy history of significant drug abuse remains a serious problem that requires "long-term intensive treatment to address," and that her substance abuse and related mental-health disorders "have a severe and negative impact on her ability to parent any of her children, to empathize with them or attach to them, or to recognize the very negative impacts of her own choices on her children's health and welfare." As to father, the psychologist noted that his substance-abuse issues were "less severe than mother's," but that father remained "overwhelmed" by his own physical and psychological problems and unable to parent B.S. as a result.

As for meeting the case plan goals, the court found, in summary, that the parents had made "essentially no progress" to support a conclusion that they could safely parent B.S. They had not obtained safe and stable housing, had not made "any significant progress in mental health treatment," and mother's drug tests showed "repeated relapses." Furthermore, neither parent "had acknowledged or taken any steps to explain how [B.S.] received the devastating injuries that resulted" in this action. Nor had they taken "steps to address their history of domestic violence." The court noted, in addition, that neither parent had made any progress toward reunification with their two older children in a New Hampshire Division of Youth, Children and Families case that was pending. The court thus concluded that the evidence was "overwhelming" that neither parent could resume parental responsibilities within a reasonable time.

As for the child's interactions with the parents, the court found that mother had been inconsistent in attending scheduled parent-child contact, and accordingly had not developed a close parent-child bond, and that father had also missed visits, had not been receptive to family-time coaching, and did not appear to have a close—if indeed any—parent-child bond. As for whether they had played a constructive role in the child's life, the court found that mother loved B.S. but was not capable of protecting him, and that father remained a threat to B.S.'s safety. In the meantime, since his removal from parental custody, B.S. was doing well in his foster home, where he was well-adjusted, comfortable, and loved. The court thus granted the State's petition to terminate the parental rights of both parents. These appeals followed.

We note, at the outset, that our review is limited. "We will uphold the trial court's findings unless clearly erroneous, and its conclusions if reasonably supported by the findings." In re B.C., 2013 VT 58, ¶ 21, 194 Vt. 391. When reviewing findings on appeal, "our role is limited to determining whether they are supported by credible evidence, leaving it to the sound discretion of the family court to determine the credibility of the witnesses and to weigh the evidence." Id. (quotation omitted).

Father raises numerous claims, which we address in order. He first contends the trial court impermissibly shifted the burden to parents to prove that they would be able to resume parental responsibilities within a reasonable time.[1] He relies on the court's observation that "[n]either parent ha[s] acknowledged or taken any steps to explain how [B.S.] received the devastating injuries that resulted in" this action. The court's statement was in reference to the finding at the merits hearing that evidence the injuries resulted from abuse was "overwhelming," and that the fact that the child could not have been injured without someone knowing was "clearly and convincingly shown." The court's challenged statement here, understood in context, did not reflect an impermissible shifting of the burden of proof, but rather a recognition

---

[1] Mother joins this argument.

that parents had not refuted or undermined the clear and convincing evidence of their demonstrated inability to ensure B.S.'s future safety. Accordingly, we find no error.

In a related vein, father contends the court impermissibly incorporated its finding from the CHINS decision, made under a preponderance standard rather than a clear-and-convincing standard, that father was the source of the child's injuries. The record does not support the claim. As noted, in its CHINS decision the court was careful to differentiate its finding by "overwhelming" evidence that B.S.'s injuries were the result of abuse and that parents must have been aware of the abuse, from its finding by a preponderance of the evidence that father was the likely source of the abuse. See In re B.S., 2014 WL 7238222, at *2. The court here prefaced its decision by stating that it was "reaffirm[ing]" its CHINS findings, and proceeded to similarly focus on the overwhelming evidence that B.S. had been badly abused and seriously injured, and that parents must have been aware of the abuse, rather than on father's specific identity as the perpetrator of the abuse, ultimately concluding that parents had failed to meaningfully engage in the substance-abuse, mental-health, and parenting services necessary to ensure the child's safety. The trial court's finding that father remained a risk to the child was also reasonably supported by the record, which included a criminal incident in which he threatened violence against mother, a relief from abuse order barring father from abusing mother, disclosure of domestic violence from the New Hampshire child-protection proceeding involving their two older children, and father's failure to engage in any significant mental-health or anger-management counseling to address these concerns. Accordingly, we find no error.

Father next contends the court relied on insufficient evidence and improperly shifted the burden of proof in rejecting mother's assertion that the child's injuries might have been caused by a fall on the ice.[2] The court's findings in this regard were as follows:

> In her testimony at this hearing, mother testified for the first time about an incident that she says happened some time before [B.S.] was hospitalized for his fractures, in which she fell on the ice while holding [B.S.] in his car seat. She testified that . . . she did not fall on top of him, that his car seat remained upright, and that although he cried at the time, he did not continue to do so, and showed no signs of injury when she examined him afterwards. This incident, if it occurred as she described it, could not have been the source of any of [B.S.'s] fractures. As the court found at merits, and as the medical testimony showed conclusively, [B.S.'s] injuries are consistent only with a very significant traumatic fall, blow, or pulling and pushing, which it would have been absolutely clear was likely to result in serious injury, and which, if the mother knew about it, would have required her to seek immediate medical attention for him. This slip and fall on the ice, as described, was not such an incident.

The court's finding were supported by the evidence—which the court found to be overwhelming and conclusive—that the child's injuries resulted from a significant traumatic fall or blow, that they would have been readily apparent, and that they would naturally have led to immediate medical attention; mother's testimony fell well short of establishing that the fall on

---

[2] Mother joins in this argument.

3

the ice was a possible source of the child's injuries. We thus discern no error, to say nothing of any clear error. Nor do the findings suggest that the court improperly shifted the burden of proof; the court merely observed that mother's testimony was insufficient to explain the child's significant injuries, which the overwhelming medical evidence otherwise showed were the product of abuse.

Father next asserts that the evidence failed in two respects to support the court's conclusion that he could not resume parental responsibilities within a reasonable time. First, he asserts that the court erred in finding that Dr. Gabriel viewed father's "ongoing substance abuse issues [as] less severe" than mother's; he asserts that, in fact, Dr. Gabriel testified that father was in remission, and that the New Hampshire and DCF social workers confirmed that substance abuse was not an issue for father.

The claim is unpersuasive. First, the court did not expressly rely on father's progress, or lack thereof, in substance-abuse treatment as a basis for concluding that he could not resume parental responsibilities. Furthermore, the court's full characterization of Dr. Gabriel's testimony concerning father was as follows: "Dr. Gabriel confirmed that [father's] ongoing substance abuse issues are less severe than mother's in that he has been able to sustain a longer period of abstaining than mother has." This finding reasonably reflected Dr. Gabriel's testimony that father had experienced "serious substance issues" resulting in the possibility of "chronic cognitive neuro-dysfunction," but that he had "been able to attain a longer period of abstinence from opiates" than mother. We find no error.

Father also claims that the evidence failed to support the court's finding that he had not "made any significant progress in mental health treatment." Although father cites evidence of some treatment that he had received in Vermont and New Hampshire, the court's finding that he had not made "any significant progress" was fully supported by the record, which included Dr. Gabriel's report that father likely suffered from neurocognitive problems resulting from long-term substance abuse, an elevated likelihood to engage in child abuse, an anti-social personality disorder which "renders it very difficult to engage in treatment" because the person believes that there is nothing wrong with them, and father's denial that he has ever been domestically violent. In addition, the New Hampshire social worker testified that father's several therapy sessions had been "spent defending himself against the allegations" of abuse, and the DCF social worker testified that the anger-management counselor viewed father as "in denial of all problems regarding domestic violence." Accordingly, we find no clear error in the court's finding.

Father further asserts that the evidence failed to support the court's findings that he was not bonded with B.S., did not love B.S., and remained a threat to the child's safety. He asserts that the finding was based on the court's subjective views, and a failure to appreciate that father "might display love in a different way." He also relies on a note that father wrote expressing his love for the child.

The evidence showed, and the court found, that, although scheduled and encouraged to attend regular visits with B.S., "both parents continued to cancel, simply fail to show up, or be late for visits, resulting in their cancellation." During visits, father often wanted to talk with family-time coaches about legal proceedings rather than focus on the child, and the court found that the family-time coach "testified credibly that . . . father did not seem to have a parent-child bond with [B.S.], mostly because his visits were too infrequent and irregular."

4

It is the trial court's prerogative, and duty, to assess the credibility of witnesses and weigh the evidence, In re A.F., 160 Vt. 175, 178 (1993), and we have observed that, in so doing, the court may rely on its own common sense and experience to draw reasonable inferences from the evidence. In re L.M., 2014 VT 17, ¶ 30, 195 Vt. 637. The court's findings here that the evidence showed a lack of attachment or love between father and B.S. were supported, and we discern no clear error. As noted above, the finding that father remained a risk to the child was also reasonably supported by a host of evidence concerning prior acts of domestic violence and father's failure to engage in appropriate treatment.

Father next claims that the court committed plain error in admitting exhibits relating to the ongoing child-protection proceedings in New Hampshire concerning the parents' two older children. He contends that the records were irrelevant and contained inadmissible hearsay with respect to the issue of domestic violence. Although he asserts that the court relied heavily on this evidence, the court's decision contains only two direct findings in this regard, referring to "the girls' disclosures of domestic violence," and the New Hampshire case plan's requirement that father "refrain from physically or verbally aggressive behavior in front of or towards" the two children and mother.

Having failed to object to any of the evidence below, father must demonstrate that the court committed plain error, a finding which we have reserved for the "exceptional" case where the error affects fundamental rights. In re D.C., 157 Vt. 659, 659 (1991) (mem.). We find no basis for such a finding in this case. First, the evidence was not irrelevant. See In re J.J.P., 168 Vt. 143, 148 (1998) (court may rely on evidence relating to prior abuse of siblings to show pattern relevant to child in current proceeding). Furthermore, evidence of the family's history of domestic violence was introduced through other sources, including a police affidavit in which father threatened to harm mother, a relief from abuse order, and the New Hampshire social worker's testimony that mother and the two older children had been living in a domestic-violence shelter when they first came to New Hampshire where father tracked them down, and that the social worker's agency was concerned about father's domestic violence. Accordingly, any possible error in this regard did not affect father's fundamental rights. See In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108 (holding that we will not reverse termination-of-parental-rights judgment absent showing of error affecting substantial rights).

Father similarly claims that the court committed plain error in admitting father's criminal record, which he claims was irrelevant and unduly prejudicial in containing evidence of past domestic violence. Again, absent any objection the alleged error must go to the heart of father's fundamental right to a fair proceeding. In re G.S., 153 Vt. 651, 651 (1990) (mem.). The trial court's admission of father's criminal record, reflecting a host of convictions apparently not relied upon by the trial court, as well as a conviction relating to a prior incident of domestic assault, did not fundamentally undermine the fairness of this proceeding. . See, e.g., In re R.M., 150 Vt. 59, 69 (1988) (evidence of abuse of siblings relevant "to show the totality of the home environments directly impacting on the well-being of" the child in current proceeding).

Finally, father contends the court erred in finding that he did not have "safe or stable" housing. He notes the evidence that he had been living with his parents, and asserts that there was no showing this accommodation was unsafe or unstable. We find no error.

Father is referring to the court's finding that "neither parent had safe, stable, independent housing," a finding based on evidence that parents had relied on family and friends for housing

for a number of years, and that father had been living with his parents roughly since B.S.'s birth. This dependence was due, in part, to father's lack of any significant employment or income, and even more to his physical and psychological disabilities—discussed in detail by Dr. Gabriel— that left him "very overwhelmed" and made him "completely reliant" on others for income and housing, and which prevented him from adequately caring for himself much less others. Thus, the court's finding that father had not obtained stable, independent housing was well-supported, and—in turn—contributed to the finding that he could not resume parental responsibilities within a reasonable time. We therefore find no error, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

6