*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-103

JULY TERM, 2016

| | | |
|---|---|---|
| In re K.N. and K.K., Juveniles | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Caledonia Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NO. 94/95-10-15 Cajv |

Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Mother appeals the family court's order adjudicating her children K.N. and K.K., born in February 2011 and January 2015, as children in need of care or supervision (CHINS). On appeal, mother argues that the evidence does not support the court's findings that K.K. is CHINS due to abuse and that K.N. is CHINS for lack of proper parental care. We affirm.

The CHINS petitions were filed in October 2015. As to K.K., the petition alleged that the then-nine-month-old child was CHINS both due to the abuse and lack of proper parental care based on the facts that he had suffered unexplained, nonaccidental, significant bruising to his face and that mother failed to seek medical care. The State alleged that K.N. was CHINS due to lack of proper parental care based on the allegations regarding K.K. An emergency care order was issued for both children and they were placed with their maternal grandmother.

At the contested CHINS hearing, the following evidence was presented. The Department for Children and Families (DCF) became involved with the family after reports that mother's boyfriend disliked K.K., the baby, and had been rough with him. During an initial visit in October 2015 by a police officer and a DCF worker, nothing suspicious was detected. When the officer returned a week later, he found the boyfriend with the baby. K.N. was at her grandmother's home, and mother was not at the home. The officer observed extensive bruising and red marks on the baby's face, neck, and head. When mother returned a few minutes later, he questioned her about the source of the injuries. Mother claimed that the injuries appeared when the child had woken up that morning and stated she did not know the source. She also stated she was afraid to get medical help for K.K. because there was an open DCF investigation and she knew the doctors were mandatory reporters. The officer instructed mother to take K.K. to the hospital.

At the hospital, K.K. was examined by a physician. Mother told the doctor that the injuries could have been caused by sleeping on a toy and provided a toy to the doctor. The doctor's opinion was that K.K. had been repeatedly hit in the face and that the toy mother provided could have been used because it closely matched the pattern caused by the injuries. The doctor testified however that the force required to create the bruising was significant and could not have been created by K.K. hitting himself with the toy or sleeping on the toy. A

second doctor specializing in child abuse pediatrics also testified that the injuries were caused by multiple impacts with rapid acceleration, and that in her opinion the injuries were not accidental and could not have been caused by K.K. injuring himself. K.K.'s grandmother testified that the baby did not have the injuries the day before.

Mother changed her story several times about what happened that evening. Mother told both the emergency room doctor and a DCF social worker, who met her at the hospital, that she had solely been responsible for K.K.'s care during the prior evening and night and that her boyfriend was keeping away from the child because of the existing DCF involvement. In a later interview with a detective and DCF worker, mother stated that that she slept all night and her boyfriend got up with K.K. and gave him a bottle. At trial, mother testified that she changed her story because she was scared she would get in trouble if she admitted that she was not solely caring for K.K. She also testified that she lied all the time to make herself look good. Mother stated that in general when K.K. woke up in the middle of the night, ninety percent of the time mother cared for him. On that particular night, however, she testified that she went to bed at 8 p.m. and did not wake up until morning. Mother's boyfriend did not testify. At the close of the hearing, mother's attorney admitted that K.K. was CHINS B due to mother's failure to get medical attention for him.

A child is CHINS when, among other options, the child has been "abused by the child's parent, guardian, or custodian," or the child "is without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being." 33 V.S.A. § 5102(3)(A), (B). Because of the statutory designations, these are often referred to as CHINS A (abuse) and CHINS B (lack of proper parental care). In oral findings, the court found by a preponderance of the evidence that mother had abused K.K. and had failed to provide proper care, and therefore that K.K. was CHINS under both A and B. As to K.N., the court found that she was CHINS B because there was sufficient evidence to indicate mother's failure to get medical attention for K.K. and "lack of care would extend to" K.N. This appeal by mother followed.

The State has the burden of establishing that a child is CHINS by a preponderance of the evidence. Id. § 5315(a). "When reviewing a CHINS decision, we uphold the court's factual findings unless clearly erroneous and the court's legal conclusions when supported by those findings." In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508. "Only those findings that are bereft of evidentiary support are clearly erroneous." In re M.K., 2015 VT 8, ¶ 8, 198 Vt. 233.

Mother first argues that the evidence does not support the court's finding that she abused K.K.[1] In particular, mother alleges that the case against her was incomplete because the State failed to present testimony from her boyfriend.[2]

We conclude there was no error. To support its burden of showing CHINS by a preponderance of the evidence the State presented testimony from medical witnesses that the

---

[1] We note the unusual posture of mother's appeal in that she agreed that K.K. was CHINS due to lack of proper parental care and is challenging only the conclusion that K.K. was CHINS due to abuse. We do not reach the question of whether a parent can appeal CHINS on one basis while agreeing the child is CHINS on a different basis given the State's decision in this case not to contest mother's ability to appeal.

[2] After the initial day of trial, the State indicated that it did not anticipate calling the boyfriend as a witness. At the second day of trial, the State explained that it had subpoenaed the boyfriend, but that he was not present and the State could proceed without his testimony.

2

injuries were nonaccidental and also established through mother's and grandmother's testimony that K.K. was injured during a time when only mother and her boyfriend had access to the baby. In addition, the witnesses recounted the various statements mother made explaining what happened during that time period.

Finally, the State established its case through mother's own testimony. In making the finding of abuse, the court indicated that it did not find mother's testimony credible given the numerous accounts mother gave and her admission to lying. The court explained, however, that it was persuaded that mother was responsible by mother's statement during her testimony "if it wasn't, in fact me, and [her boyfriend] was the only other person in the household, it kind of, obviously, leaves him." It was well within the court's province as factfinder to discredit certain of mother's testimony but believe other parts and find based on the entirety of the evidence that she was responsible for K.K.'s injuries. See In re A.F., 160 Vt. 175, 178 (1993) (explaining that family court has discretion to determine witness's credibility and weigh evidence).

Further, the lack of testimony by mother's boyfriend does not make this finding any less proper. The State had the burden of presenting its case and satisfied that burden with the evidence it submitted. If mother thought that the boyfriend's testimony was important to her case, she could have secured his presence. At no time at trial did she indicate that she had sought or required his testimony.

Mother next argues that the evidence does not support the court's finding that K.N. was CHINS due to lack of proper parental care because the evidence showed that K.N. was happy and healthy and there was no indication that she had been abused or lacked care. Because a CHINS proceeding is focused on the child's welfare, "the State is not required to demonstrate that the child has suffered actual harm, but rather is subject to a risk of harm." In re J.C., 2016 VT 9, ¶ 7, __ Vt. __. In evaluating the risk of harm, the court may consider evidence of a sibling's treatment. Id.; see In re J.J.P., 168 Vt. 143, 148 (1998) ("The court may rely on evidence of a parent's treatment of siblings to show a pattern of abuse and neglect, and a general inability to protect the children from harm."); E.J.R. v. Young, 162 Vt. 219, 224 (1994) (stating that "family court may rely on evidence of the treatment of a sibling in concluding that a child is a CHINS").

The court's specific findings as to K.N. are indeed sparse, and its analysis would have been far stronger if it had given a fuller explanation, but we are satisfied that the decision provides a minimally sufficient basis to support its conclusion that K.N. was CHINS. The court found that mother inflicted abuse on K.K. and then failed to seek medical attention for K.K.'s serious injuries because she did not want the injuries to be reported to DCF. Based on these actions, the trial court found that K.N. was at risk because mother's "lack of care would extend to the other child."

Mother asserts that the evidence fails to support a finding that K.N. was at risk because she is older, easier to care for, lacks a history of abuse, and could self-report any abuse. Despite the lack of history and K.N.'s older age, the court's finding is supported. The reason for mother's failure to provide proper care for K.K. did not depend on facts particular to K.K., such as his young age and his need for more intensive care. Mother admitted that she failed to get medical attention for K.K. because she knew that the medical professionals were mandatory reporters. She also stated that she would lie to make herself look good. These attributes are particular to mother, not one child, and provide a sufficient basis to conclude that mother would not act differently to protect K.N.'s welfare or seek medical attention for her, and therefore that K.N. was similarly at risk of harm in mother's care.

3

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

4