¶ 1.
Eaton, J.
Mother appeals from the trial court’s order finding M.M. and C.M. to be children in need of care or supervision (CHINS). We affirm.
¶ 2. M.M. was born in September 2006; C.M. was born on June 25, 2014. The Department for Children and Families (DCF) began working with mother in June 2012. On June 25, 2014, DCF filed a petition alleging that M.M. and C.M. were CHINS. The parties agreed to a conditional care order with mother retaining custody subject to extensive conditions. Father was incarcerated at the time.
¶ 3. Following a January 2015 merits hearing, the court found the children to be CHINS. The trial court made the following findings. Mother became an opiate addict at age eighteen after which she “embarked on an unhappy diaspora of addiction.” She has been on and off Suboxone for nine years. Mother’s addiction issues may include alcohol. In October 2013, mother was arrested for driving while intoxicated. Her BAC Datamaster test result was .159%, roughly twice the legal limit for intoxication, which the court found sufficiently high to show an unhealthy tolerance for alcohol. Daughter M.M., then age seven, was riding in mother’s car at the time of mother’s DWI. She was not in a child safety seat or booster seat but was instead lying on the backseat with a seatbelt draped over her. The arresting officer was very familiar with mother and M.M. and he recognized them on contact. He had previously stopped and warned mother for allowing M.M. to ride in the car without proper restraints. The officer estimated that M.M. weighed fifty pounds at the time of mother’s DWI.
¶ 4. The court found that mother has been on and off treatment over the years. Some of the events that interrupted her prolonged treatment were outside of her control, such as the retirement of one of her doctors. It concluded that others, like losing her license and therefore her transportation to treatment in April 2014, were entirely her own fault. From the late fall of 2013 to May 2014, mother was not in treatment. Mother became pregnant with C.M. in the fall of 2013. During that fall and winter, mother was using street, or unprescribed, buprenorphine (Suboxone).
¶ 5. In the spring of 2014, after mother revealed her street buprenorphine use, a public health nurse told mother that she *543 should continue to use the drug to avoid the harmful prospect of intrauterine damage to the unborn child and herself if she suddenly stopped. When mother returned to professional treatment on May 20, 2014, she was prescribed Subutex, a form of Suboxone. As a result of her self-medication — which itself then necessitated her being prescribed Subutex for her last month of pregnancy — C.M. was born opioid-dependent and required two months to be weaned off of opioids.
¶ 6. Despite her recent DWI incident, mother used alcohol on one occasion in February 2014 while five months pregnant with C.M. Mother also smokes cigarettes and did so throughout her pregnancy. The court found that not only was C.M. born significantly underweight at five pounds, but he also had a heart defect. There was no medical opinion provided linking mother’s continued smoking during pregnancy or her episode with alcohol to any medical issues with the child in útero, although mother admitted that she had been told by hospital personnel that her smoking and drug use may have contributed to the baby’s small birth weight.
¶ 7. As indicated above, DCF had been working with mother since June 2012. DCF was attempting to assist mother with issues involving domestic abuse by her male partner, failure to supervise M.M., and her admitted history of substance abuse. Mother was an inconsistent participant in DCF’s efforts to assist her, sometimes refusing to sign releases and disappearing for periods of time, but being cooperative and actively engaged in services at other times. For his part, father had apparently been in and out of jail and not engaged with the children.
¶ 8. At times, mother had responded to DCF concerns. When confronted about significant dental neglect of M.M., for example, mother scheduled a dentist’s appointment and remedied the problem. The court concluded that M.M.’s dental neglect could likely have worsened had DCF not threatened intervention. Fortunately for mother and the children, mother’s father and his girlfriend had consistently stepped up to support mother and protect the children.
¶ 9. Based on its findings, the court concluded that at the time the petition was filed both children were CHINS.[1] The court *544 determined that M.M. was grossly neglected when on two occasions mother drove while M.M. was unrestrained by an appropriate car seat. In the second incident, mother was driving while highly intoxicated. The court found that mother exposed her young child to a grave and real risk of serious bodily injury by driving drunk with M.M. unrestrained in the car. The court concluded that C.M. was CHINS at the time of the petition as well. He was born, in part due to mother’s substance abuse, addicted to opiates[2] and with a low birth weight. He required two months to be weaned off of substances, substances that were present because of mother’s addiction. While all of C.M.’s health problems might not be directly attributable to mother’s addiction (mother claimed that his heart condition was genetic), the court noted that it was uncontroverted that the child was born addicted. The court also noted that while mother was seemingly not ready to take responsibility for that during her testimony, it was simply a fact that could not be disputed.
¶ 10. While the children were CHINS, the court noted some positive progress by mother since C.M.’s birth. Mother was substance free and in treatment. She lived in her own apartment and no longer at her father’s home. She was trying to quit smoking. DCF allowed the children to be placed with mother. In short, the court concluded, mother seemed to be on a positive trajectory toward overcoming her addiction and being a responsible parent.
¶ 11. Mother appeals from the court’s order, raising numerous arguments. She first takes issue with some of the court’s findings, arguing that: C.M. was born at five pounds, fifteen ounces, which is not “significantly underweight”; C.M. was not “addicted” to opiates as that term is technically defined; the court erroneously *545 stated that mother became pregnant with C.M. “because” she was using drugs; mother was “in treatment” from the fall of 2013 to May 20, 2014, even though she refused to sign releases; and her high BAC did not demonstrate an “unhealthy tolerance for alcohol.” As to C.M., mother contends that he was not CHINS simply because he was opiate-dependent at birth and that the court construed the CHINS statute too broadly in reaching its decision.[3] Mother also asserts that M.M. was not CHINS because the DWI and the dental neglect occurred well before the CHINS petition was filed.
¶ 12. A child is CHINS if he or she “is without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being.” 33 V.S.A. § 5102(3)(B). As we recently reiterated, “the focus of a CHINS proceeding is the welfare of the child. The State must prove, and the court must determine [by a preponderance of the evidence], if the allegations in a CHINS petition have been established.” In re B.R., 2014 VT 37, ¶ 13, 196 Vt. 304, 97 A.3d 867 (quotation and citation omitted). A child does not need to suffer “actual harm” before he or she can be adjudicated CHINS. In re L.M., 2014 VT 17, ¶ 29, 195 Vt. 637, 93 A.3d 553. On review, we will uphold the trial court’s findings unless they are clearly erroneous, and the court’s legal conclusions will stand when supported by the findings. In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508, 82 A.3d 1143. It is not our role “to second-guess the family court or to reweigh the evidence.” In re S.B., 174 Vt. 427, 429, 800 A.2d 476, 479 (2002) (mem.).
¶ 13. None of the alleged factual errors identified by mother are significant and none warrant reversal. See In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108, 39 A.3d 682 (stating that Supreme Court applies harmless error analysis in juvenile cases, and will reverse judgment only where error has affected substantial rights of party); see also In re D.D., 2013 VT 79, ¶ 34 (reiterating that in juvenile proceedings court’s decision will not be reversed, even *546 if some of trial court’s findings are unsupported, “if the remainder of the court’s findings, which are supported by the record, are sufficient to sustain the decision” (quotation and brackets omitted)).
¶ 14. The court stated that C.M. was five pounds at birth, which it characterized as “significantly underweight” and as a “low birth weight.” Mother points to her testimony that C.M. was five pounds, fifteen ounces, when born. Even if the court incorrectly believed that a five or six pound newborn is “underweight,” it was not a significant finding in light of other evidence of the newborn’s condition. We note that mother herself testified that she was told by hospital employees that the child was “a little small,” and that there had been concern during her pregnancy, given her drug use and her smoking throughout the pregnancy, that the child would have a low birth weight.
¶ 15. It cannot reasonably be disputed that C.M. was “addicted” to opioids at birth applying a common-sense definition of that term, or that he needed two months to be weaned off of drugs. It is of no moment that the court used the word “addicted” as opposed to opioid-dependent. It is beyond dispute that C.M. had to be weaned off drugs because mother used drugs while she was pregnant. The reason that mother was put on a prescribed dose of drugs during her last month of pregnancy was because mother had used Suboxone she acquired on the street up to that point in her pregnancy, and thus, the unborn baby would suffer from acute withdrawal if mother were to stop using drugs immediately. Again, mother herself testified to this effect. The court’s finding that mother became pregnant “because” she was using drugs appears to be a simple misstatement. Alternatively, as the State posits, the court may have been commenting that it was unfortunate, because mother was using drugs, that mother became pregnant. Regardless, this statement had no bearing on the court’s decision that C.M. was CHINS.
¶ 16. The court’s findings that mother was in and out of treatment and that she refused to sign releases are also supported by the evidence. The focus of the court’s concern was mother’s inconsistency in addressing her drug problem. It is uncontested that mother has been in treatment for nine years. Mother was DWI in October 2013, and she reported to DCF in December 2013 that she had relapsed and was using opiates. She was seeing a doctor but the doctor had asked her to leave his care. The social *547 worker testified that between December 2013 and May 2014 mother was inconsistent in providing urine screens and there was a concern that she was not in treatment. The social worker further testified that mother was not in treatment between February 2014 and May 2014. Mother relapsed with alcohol in February 2014, and she acknowledged being kicked out of her doctor’s care. Mother was supposed to go to a daily clinic in Burlington, but she claimed it was difficult for her to do so. At a May 14, 2014 meeting with DCF, mother acknowledged that she was not in treatment and that she was using Suboxone off the street. On May 20, 2014, mother entered a program at Fletcher Allen.
¶ 17. Mother’s own testimony echoes this sequence of events. She described the retirement of her treating doctor and her search for a new doctor in the fall of 2013. She testified that before she was accepted into the new program in November 2013, she was using Suboxone off the street. She continued to use street drugs as she disclosed to DCF at a May 2014 meeting.
¶ 18. Even if it is not completely accurate to say that mother was not in treatment from the late fall of 2013 to May 2014, the error is harmless. Her participation was inconsistent, at best, and continued to involve the use of street drugs. She enrolled in a course of treatment through a hospital only one month before C.M. was born. Her refusal to sign releases concerning her care also raises concerns.
¶ 19. Based on this and other evidence, the court did not err in concluding that C.M. was CHINS. This is not a case where mother learned of her pregnancy and immediately sought help in a therapeutic setting, following a prescribed course of treatment, as in New Jersey Division of Child Protection, & Permanency v. Y.N., 104 A.3d 244 (N.J. 2014). The New Jersey court also applied a completely different statutory standard in conducting its analysis. Y.N. involved a prosecution of a parent for abusing and neglecting her child, and the state was required to prove that the mother “unreasonably inflicted harm on her newborn and did so, at least, by acting with gross negligence or recklessness.” Id. at 246, 253 (stating that New Jersey statute “makes clear that parental fault is an essential element for a finding of abuse or neglect”). By contrast, “the focus of a CHINS proceeding is the welfare of the child,” In re B.R., 2014 VT 37, ¶ 13 (quotation *548 omitted), and the court must determine if a child is without the proper parental care necessary for his or her well-being, 33 V.S.A. § 5102(3)(B).
¶ 20. The New Jersey court held, under the New Jersey statute, that “absent exceptional circumstances, a finding of abuse or neglect cannot be sustained based solely on a newborn’s enduring methadone withdrawal following a mother’s timely participation in a bona fide treatment program prescribed by a licensed healthcare professional to whom she has made full disclosure.” Y.N., 104 A.3d at 246. Its decision turned on the absence of evidence to show parental fault. See id. at 255 (concluding that lower court erred “by concentrating on harm without regard to parental fault”). Even putting aside critical differences in statutory language, mother’s disclosure and enrollment in a bona fide treatment program in the instant case one month before giving birth cannot be construed as “timely.”
¶ 21. The record here shows that mother was kicked out of treatment, accessed unprescribed Suboxone off the street, and did not return to a medically monitored treatment regimen until shortly before the birth of the child. We agree that pregnant women should not run the risk that taking prescribed drugs for addiction treatment will necessarily result in a CHINS finding should their children be born addicted to medications prescribed to treat that addiction. That a child is born addicted to opioids, standing alone, does not necessarily require a finding of CHINS where that addiction is the result of the mother consistently and fully following a bona fide addiction treatment program. To hold otherwise would serve as a disincentive for pregnant women to seek out treatment for their addiction. But such is not the case here. Although access to services may provide barriers in some instances, mother had gotten treatment through approved sources and lost that opportunity due to her own conduct. Mother’s choice to use drugs accessed on the street, without proper medical monitoring, is fraught with danger in a host of ways, including abuse of Suboxone itself.
¶ 22. Finally, it was reasonable for the court to consider that a person who can operate a car with a BAC of .159 — almost twice the legal limit — may have an “unhealthy tolerance for alcohol.” Even if this were not a reasonable assumption, the error is harmless. It is undisputed that mother was driving while *549 significantly impaired with her minor daughter unrestrained in the backseat. This was the focus of the court’s concern, not mother’s relative tolerance for alcohol. Mother’s consumption of alcohol on one occasion during her pregnancy does not rise to the level of concern necessary to support a CHINS determination. More concerning is the timing of her resumption of alcohol use, coming just a few months after a DUI arrest where her BAC was nearly twice the legal limit and during a time when she was not in treatment for her opioid addiction. The use of alcohol under those conditions, to say nothing of the fact of her pregnancy, is evidence that mother’s stability concerning substances was perilous. There was sufficient evidence for the court to find C.M. was CHINS as of the date the petition was filed.
¶ 23. We thus turn to mother’s remaining arguments. Mother argues that the court’s findings concerning M.M. were too far removed from the date that the CHINS petition was filed. She maintains, and we agree, that a child must be CHINS “at the time of the filing of the petition,” In re D.T., 170 Vt. 148, 156, 743 A.2d 1077, 1084 (1999), and she asserts that the “stale evidence” here cannot support a CHINS ruling.
¶ 24. We reject this argument. As mother acknowledges, we held in In re L.M. that a court’s CHINS analysis is not “limited only to the child’s well-being on the precise day that the CHINS petition was filed.” 2014 VT 17, ¶ 20. We explained that:
Obviously, the circumstances leading up to the filing of the CHINS petition are relevant in the court’s assessment. This allows the court to have a full picture of the child’s well-being and to base its decision on all relevant information; it promotes the care and protection of the child, while not unfairly undermining parents’ interest in maintaining family integrity.

Id.

¶ 25. In this case, the court was mindful of mother’s inconsistent record in addressing her opioid addiction, addressing M.M.’s basic needs such as dental care, and participating in DCF’s efforts to assist her in addressing these and other problems. The record before the court showed that mother had been on and off Suboxone for nine years. She was using this drug off the street, while pregnant, until a month before the CHINS *550 petition was filed. She was in and out of treatment for her opioid addiction and she suffered several relapses before the CHINS petition was filed. She neglected M.M.’s dental needs to the point where DCF threatened to intervene. She drove with M.M. unrestrained in the car twice. She had been warned by a police officer that M.M. must be properly restrained, yet she allowed the child to ride in the back seat again unrestrained while she was driving the car in a highly intoxicated state. As the trial court found, this placed M.M. at a grave risk of harm. Mother pled guilty to DWI in April 2014, shortly before the CHINS petition was filed. This evidence was relevant to an assessment of M.M.’s well-being, and the trial court could properly consider it in reaching its conclusion. We reject mother’s argument that this evidence was too “stale” to support a finding, by a preponderance of the evidence, that on June 25, 2014, M.M. was without proper parental care necessary for her well-being.
¶ 26. Finally, we reject mother’s suggestion that the court here construed the CHINS statute too broadly. The court applied the plain language of the statute and appropriately assessed whether the children were without proper parental care necessary for their well-being as required by 33 V.S.A. § 5102(3)(B). That mother disagrees with the trial court’s conclusion does not render its decision unconstitutional.

Affirmed.

 Although both parties agree that a CHINS determination requires that a child be one who is in need of care, 33 V.S.A. §§ 5315(a), 5102(3)(B), the parties have not *544 preserved the issue of whether the use of the word “is” requires that the child need care only at the time the CHINS petition is filed or whether the child must also need care at the time of the merits determination. For purposes of this appeal, both parties agree that the use of the present tense in § 5315 and in § 5102 applies only to the time of filing the petition. Accordingly, we do not consider the issue further.

 Although witnesses and the trial court stated that C.M. had been exposed in útero to opiates, the evidence more accurately indicated C.M. had been exposed to a synthetic medication, buprenorphine (Suboxone), which is an opioid as opposed to an opiate. We have used the term “opioid” in our analysis, but have not substituted it in place of the parties’ use of “opiate” in their contentions. The distinction between an opiate and an opioid does not affect our analysis.

 Mother also filed a motion asking this Court to take judicial notice of a statement made by the State in another case, In re D.S., No. 2015-029, 2015 WL 3767188 (Vt. June 16, 2015), that the State “does not oppose Medication Assisted Treatment (MAT) for pregnant women with opiate addictions.” The State reiterates that position in this appeal, but it points to other factors in this case that led the court to reach the conclusion that it did. We deny mother’s request to take judicial notice of the State’s position in another case.