*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-069

JUNE TERM, 2016

In re D.B., Juvenile  }  APPEALED FROM:

}

}  Superior Court, Windham Unit,

}  Family Division

}

}  DOCKET NO. 114-9-15 Wmjv

Trial Judge: Karen R. Carroll

In the above-entitled cause, the Clerk will enter:

Mother appeals from the trial court's determination that D.B. was a child in need of care or supervision (CHINS). She argues that several of the court's findings are clearly erroneous, and that the findings do not support the court's conclusion. We affirm.

The trial court made the following findings by clear and convincing evidence. D.B. was born in late August 2015 when mother was eighteen years old. A nurse who worked with mother at the hospital found mother easily overwhelmed and frustrated with D.B. Mother did not take instruction well; she was prone to angry outbursts and when coached, she would often respond, "I know what I'm doing." Given mother's behavior, the nurse worried about D.M.'s ability to attach to mother. Other hospital employees had similar concerns. At the direction of D.M.'s pediatrician, the nurse reported her concerns about mother's emotional state to the Department for Children and Families (DCF).

When mother left the hospital, she and D.B. lived with grandmother. In late September 2015, an incident occurred at grandmother's home, which led to the filing of an emergency care order and this CHINS petition. Grandmother recounted that on the day of this incident, mother had been in an argument with her father. Mother became very upset and indicated that she "might as well just go kill myself." Mother stated that she might get a knife and stab herself. Grandmother and mother had words, and mother began to pack her belongings to leave with D.B. At grandmother's invitation, a Ms. Brown and Ms. Tell, who worked as family self-sufficiency coordinators, came to grandmother's apartment. Mother appeared upset and agitated. Mother's aunt was holding D.B. Ms. Brown asked mother if she would like to talk outside and mother swore at her. Unprompted, Ms. Tell suggested that adoption was a good option for mother. This angered mother, who told her aunt to give her D.B. When the aunt refused, mother grabbed D.B. Mother hurriedly carried D.B. into the kitchen and dumped his bottle in the sink.

During this time, mother had D.B.'s head in the crook of her elbow. D.B.'s body was not secure in mother's arms; his torso and legs were hanging, unsupported. D.B. was crying and very upset. Mother was agitated, screaming and yelling obscenities while moving around quickly. This continued for several minutes until mother went outside with D.B., still holding him in the same way. Ms. Brown followed mother, concerned that D.B. might fall. When Ms.

Brown expressed concern about the way mother was holding the baby, mother did not reposition D.B. The police were called, and Ms. Brown, who was a mandated reporter, made a report to DCF. Mother talked with a police officer and a social worker and agreed with their request that she get a mental health evaluation and went to the hospital with them. She returned home after the evaluation at the hospital.

Mother acknowledged that she was very upset that day, but denied holding D.B. inappropriately. Mother testified that D.B. slept in her arms during the entire incident, which she estimated lasted about thirty minutes.

Based on these and other findings, the court concluded that D.B. was without proper parental care on the date that the CHINS petition was filed. The court found that, by all accounts, mother was frustrated and overwhelmed in the hospital and emotionally dysregulated at home. Numerous individuals were concerned that mother's behavior would interfere with her ability to care for D.B. On the day in question, mother became angry and overwhelmed during a phone call with her father. She threatened to kill herself in front of other people and indicated that she should get a knife and stab herself. Mother was not in a mentally safe place. The court found that Ms. Tell's "bold and highly inappropriate comment" to mother about adoption escalated an already heated situation. Mother reacted to this situation in a way that placed D.B. at risk and jeopardized his welfare. The court found Ms. Brown extremely credible in describing mother's forceful removal of D.B. from her aunt's arms, and her act of putting D.B.'s head in the crook of her shoulder and allowing him, at four weeks old, to dangle from her elbow, his body unsupported, while she quickly moved about inside and outside the apartment. Mother was emotionally distraught and did not take direction from Ms. Brown to reposition D.B. D.B. was screaming and crying and this did not cause mother to realize, during her mental crisis, that he was in danger of injury. As in the hospital, mother believed that she was doing the right thing by her child at that moment and did not want to hear otherwise.

The court recognized that new parents have bad days and can become emotional. Unlike most parents, however, mother was unable to manage her emotions and anger in a way that would keep D.B. safe. The court found that this was not a one-time incident of a parent losing her patience and not attending to a child. Here, mother physically put D.B. in danger. The court found it concerning that mother did not know that holding a four-week-old infant in the manner in which she did could cause him serious injury, and that mother appeared unwilling to learn and accept education from others to prevent it from happening again. The court concluded that D.B. was CHINS as his well-being was threatened on the day in question and he was at risk of harm. Mother appealed from the court's decision.

Mother first asserts that the court made contradictory findings about the way in which she was holding D.B., noting that the court initially found that she had D.B.'s head in the crook of her elbow and later described her carrying him with his head in the crook of her shoulder. Mother maintains these findings leave in doubt how the court resolved the evidence, and undermine the court's finding by clear and convincing evidence. Turning to the court's legal conclusion, mother asserts that this was a one-time extraordinary incident, not likely to be repeated, and that it had nothing to do with feeling frustrated and overwhelmed by the demands of parenthood. Mother asserts that there was no evidence that she did not accept education from others or that D.B. was generally without proper parental care.

We find no basis to disturb the court's decision here. A child is CHINS if he or she "is without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being." 33 V.S.A. § 5102(3)(B). "[T]he focus of a CHINS proceeding is the welfare of the child," and a "child does not need to suffer 'actual harm' before he or she can be adjudicated CHINS." In re M.M., 2015 VT 122, ¶ 12 (quotations omitted). On review, we will uphold the court's findings unless clearly erroneous, and we will uphold its legal conclusions where supported by the findings. Id. Even if some of the court's findings are unsupported, we will uphold its decision "if the remainder of the court's findings, which are supported by the record, are sufficient to sustain" it. In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508 (quotation omitted). "It is not our role to second-guess the family court or to reweigh the evidence." In re M.M., 2015 VT 122, ¶ 12.

First, the court's slightly disparate descriptions of the way mother was holding D.B. do not render its findings and conclusions clearly erroneous. Whether D.B.'s head rested in the crook of mother's shoulder or the crook of her elbow, or both, is not the central issue here. What the court found significant was that mother held D.B. in a way that left his legs and the lower half of his torso dangling and unsupported. This key finding is amply supported by the evidence.

Ms. Brown stated that mother grabbed the baby from her aunt in a rough way and that she did not have a secure hold on the baby. She testified that mother had "the baby's head in the bend of her arm," but was not otherwise supporting him and physically demonstrated mother's hold to the court. While holding D.B. in this way, mother was quite agitated, pacing, yelling, and screaming obscenities; she was also making cellphone calls with one hand. This continued for twenty minutes, and mother did not respond to Ms. Brown's instructions about repositioning D.B.

Ms. Tell similarly testified that mother roughly grabbed the baby from her aunt. Mother was yelling, swearing, and seemed out of control. She indicated that D.B. was barely in mother's arms; his head was on her shoulder but mother was not supporting the bottom half of the baby. The crux of the court's decision—that mother placed D.B. at risk of harm by failing to adequately support him while moving around rapidly, despite being asked to change her hold—is well supported by the evidence. The court did not find, as mother suggests, that she had D.B. in a chokehold. Additionally, the court could reasonably infer that the baby was crying because he was in distress; what the court found significant was the fact that mother did not infer from the child's screams that he was in danger.

The court's findings support its conclusion that D.B. was CHINS. The court found that mother physically put D.B. in danger and jeopardized his welfare. He was without proper parental care on the date that the CHINS petition was filed, which was the question before the court. The court explained that mother struggled with anger and frustration issues since D.B.'s birth and she could not manage her emotions in a way that kept D.B. safe. The court found it particularly concerning that mother did not know that her actions put D.B. at risk, and that she was unwilling to accept suggestions from others to prevent it from happening again. This latter finding is supported by the record, contrary to mother's assertion. Ms. Tell testified that mother did not respond when she expressed concern about the way in which she was holding D.B., and a nurse testified that mother was resistant to accepting parenting advice, reacting in anger to coaching, and stating that she knew what she was doing. While mother disagrees with the way in which the trial court weighed the evidence, she does not show that it erred in reaching its conclusion. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571, 980 A.2d 799

(explaining arguments which amount to nothing more than disagreement with court's reasoning and conclusion do not make out case for an abuse of discretion).

    Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice