*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-184

NOVEMBER TERM, 2016

| | |
|---|---|
| In re C.H. and J.H., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 100/101-6-15 Frjv |
| | |
| | Trial Judge: Robert A. Mello |

In the above-entitled cause, the Clerk will enter:

Mother appeals from the trial court's determination that C.H. and J.H. were children in need of care or supervision (CHINS). She argues that the court's order should be reversed because she did not know that father was sexually abusing an older child, Ja.H. We affirm.

Mother and father are the adoptive parents of Ja.H., born in September 2001 and C.H., born in September 2002. These children are mother's nephews.[1] Mother and father are also the biological parents of J.H., born in October 2005.

In June 2015, Ja.H. disclosed that he was repeatedly sexually abused by father. C.H. and J.H. were taken into emergency DCF custody, and following an April 2016 hearing, the court determined that the children were CHINS. The court found that between October 2013 and June 2015, father repeatedly sexually abused Ja.H., including in the marital home. Father admitted to sexually abusing Ja.H. twenty-five times. The court found that mother was unaware that the assaults were occurring, but that she had reason to suspect that something was amiss when she discovered a rash or injury of some sort in one of the children's private area. Mother told father by email that if he had caused the child's injury, she would kill him. The court rejected as not credible mother's assertion that her email reflected concern about a different topic, namely the cleanliness of father's home or concern about father's roommate.[2] The court found that at the time mother sent the email, she had reason to suspect that father might be touching J.H. inappropriately, although she did not have actual knowledge that he was doing so.

---

[1] Mother testified that these children were adopted in August 2012. One year earlier, in August 2011, mother and father also became the foster parents of C.H.'s and Ja.H's two sisters, mother's nieces. Mother testified that one of the nieces, A.M., was removed from her home by DCF following a physical altercation with mother. Mother testified that the second niece left the home after Ja.H disclosed that the niece had sexually abused Ja.H. Court records indicate that Ja.H. was taken into DCF custody in January 2015 and adjudicated CHINS in April 2015. Parents voluntarily relinquished their rights in Ja.H. in June 2015.

[2] Mother testified that father moved out of the marital home in October 2014.

The court ultimately concluded that C.H. and J.H. were without needed parental protection at the time the petitions were filed for two reasons. First, the court found that the children were at substantial risk of being sexually abused by father. Second, the court found that mother was not in a position to protect them because she had no actual knowledge of the abuse, and even though she suspected something untoward was occurring, she did not believe father was sexually abusing Ja.H. when in fact he was. The court made additional findings about mother's behavior toward Ja.H. and her two nieces, but rejected the State's contention that because mother had treated these three children a certain way, she could not be trusted to appropriately parent C.H. and J.H. The court ordered the children into mother's custody with conditions it deemed necessary to ensure the children's safety and welfare. This appeal followed.

Mother asserts that the court erred in finding the children to be CHINS because she did not actually know, or have reason to suspect, that father was sexually abusing Ja.H. She questions why her observation of redness in J.H.'s groin area would cause her to suspect that Ja.H. was being sexually abused and suggests that the court may have confused the two children in reaching its decision. Mother further argues that her disbelief of Ja.H.'s disclosures did not put C.H. and J.H. at risk of harm because within a short timeframe, father was arrested and incarcerated. According to mother, she was providing C.H. and J.H. with adequate parental protection at the time the CHINS petition was filed, and the court therefore erred in concluding that they were at significant risk of sexual abuse.

A child is CHINS when he or she "is without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being." 33 V.S.A. § 5102(3)(B). We liberally construe this language. In re B.R., 2014 VT 37, ¶¶ 14-15, 196 Vt. 304. "We have expressly recognized that because a child's well-being is the central concern in a CHINS proceeding, a court may adjudicate the child as CHINS even if the allegations are established as to one parent but not the other." Id. ¶ 15 (quotation omitted). On review, we will uphold the trial court's findings unless they are clearly erroneous and its legal conclusions when they are supported by the findings. In re M.M. & C.M., 2015 VT 122, ¶ 12 (quotation omitted). "It is not our role to second-guess the family court or to reweigh the evidence." Id. (quotation omitted).

We find no error here. First, the court did not confuse the children in reaching its decision. The court found that mother observed a rash or injury in "one of the children's private area," which gave her reason to suspect that father might be touching J.H. inappropriately. This finding is supported by the record, specifically, by mother's threat to kill father if he had caused the child's injury. The court did not rest its decision on this finding, however. It instead concluded that the children were CHINS because they were at substantial risk of being sexually assaulted by father and mother could not protect them because she did not know that father was sexually abusing Ja.H. and she did not believe it when confronted with the allegations. These findings are supported by the record, and they support the court's conclusion that the children lacked "proper parental care . . . necessary for [their] wellbeing." 33 V.S.A. § 5102(3)(B). As set forth above, father sexually abused one of the parties' children over twenty-five times between 2013 and 2015, including in the marital home. Because J.H. and C.H. lived with father and later visited father at his new home, they were plainly at risk of being sexually abused by him. See In re J.C., 2016 VT 9, ¶ 7 (explaining that it is "well settled that the family court may rely on evidence of the treatment of a sibling in concluding that a child is a CHINS" (quotation omitted)). This risk was enhanced because mother did not know that father was sexually abusing Ja.H. See id. ("Because the critical focus in a CHINS proceeding is on the child's well-being, the State is not required to demonstrate that the child has suffered actual harm, but rather is subject to a risk of harm."). Mother's lack of knowledge rendered her unable to protect the children. Mother's refusal to believe the abuse

allegations, despite father's admissions of abuse, was relevant in assessing the risk of harm. The fact that father was taken into custody shortly after the CHINS petition was filed does not undermine the court's finding about mother's behavior or negate the risk that the children faced during the time leading up to the CHINS petition. See In re L.M., 2014 VT 17, ¶ 20, 195 Vt. 637 (rejecting argument that trial court's analysis is limited to child's well-being on precise day that CHINS petition filed and stating that "[o]bviously, the circumstances leading up to the filing of the CHINS petition are relevant in the court's assessment"). To the extent that mother argues that she was providing adequate parental protection, the court concluded otherwise, and its decision is supported by the record. This Court does not reweigh the evidence on appeal. In re M.M. & C.M., 2015 VT 122, ¶ 12.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

3