2013 VT 31

## In re J.H., Juvenile

[70 A.3d 1054]

No. 12-316

Present: **Reiber, C.J., Dooley, Burgess and Robinson, JJ., and Zonay, Supr. J., Specially Assigned**

Opinion Filed May 10, 2013

*Matthew F. Valerio*, Defender General, and *Marshall Pahl*, Appellate Defender, Montpelier, for Appellant.

*Christina Rainville*, Bennington County Chief Deputy State's Attorney, Bennington, for Appellee.

¶ 1. **Dooley, J.** This is an appeal from an adjudication that the minor J.H. was a child in need of care and supervision (CHINS) for being "habitually and without justification truant from compulsory school attendance," pursuant to 33 V.S.A. § 5102(3)(D). J.H. contends: (1) the evidence was insufficient to support the findings; and (2) the court improperly shifted the burden of proof on the question of whether she was habitually truant "without justification." For the reasons set forth below, we reverse the judgment.

¶ 2. The record evidence may be summarized as follows. On February 17, 2012, the State filed a petition in the superior court, family division, alleging that J.H., then thirteen years old, was a child in need of care and supervision as a result of being "habitually and without justification truant from compulsory school attendance" under 33 V.S.A. § 5102(3)(D). The trial court held a merits hearing on June 21, 2012. Both parents and the minor were present and represented by counsel.

¶ 3. The only witness was a Bennington County deputy sheriff who testified that he served as the county's truancy officer. He recalled that he "responded to [J.H.'s] residence around five times for truancy complaints" during the month of January 2012. He testified that the first time he went to the residence J.H.'s father answered the door, admitted the officer, and woke up J.H., who was sleeping on a mattress in the living room. J.H.'s father informed her that the officer said he "was there to bring her to school," and the officer proceeded to do so. The officer could not recall whether J.H. or her father offered any reason for J.H.'s absence.

¶ 4. The officer testified that he ended up transporting J.H. to school on two subsequent days in January. Again, he could not recall whether J.H. or her father gave any reason for her absence. On the third occasion, the officer served a "truancy notice," the

purpose of which is to warn a parent or guardian that a truancy case could be brought if their child is continually absent. The officer went to the home twice more in January (the fourth and fifth visits that month), but there was no response from anyone at the residence.

¶ 5. The officer described the general protocol governing truancy reports to the sheriff's department, explaining that "usually the process works when the attendance clerk from [the] school . . . call[s] the sheriff's department" and the dispatcher, in response, "start[s] a truancy complaint . . . . and then she'll dispatch me to the residence." Once there, the officer generally attempts to "speak with the parent or guardian" and "if everything works out . . . ends up transporting the child to school."

¶ 6. At the conclusion of the officer's testimony, J.H.'s counsel moved to dismiss the petition, asserting that the evidence was insufficient to establish that J.H. was habitually truant. The trial court denied the motion, finding that five truancy reports within "a matter of weeks . . . meet[s] the definition of being habitually not at school." The court also observed it had "no evidence . . . of justification for [J.H.] not being in school."

¶ 7. J.H. declined to present any evidence, and renewed the motion to dismiss. After additional argument, the court again denied the motion, finding that, based on the officer's description of his truancy "protocol," a "reasonable inference can be drawn that he went to [J.H.'s] home because he was dispatched there for a reported truancy." The court thus ruled that the State had met its burden of proving by a preponderance of the evidence "that between the beginning or middle of January until the end of January, the juvenile was habitually . . . without justification . . . truant from school." This appeal by J.H. followed.[1]

¶ 8. J.H. contends that the evidence was insufficient to prove the essential elements of a CHINS adjudication based on truancy. "On review of the court's CHINS decision, we will uphold the court's findings of fact unless they are clearly erroneous; we will uphold the court's legal conclusions where supported by its findings." *In re M.L.*, 2010 VT 5, ¶ 8, 187 Vt. 291, 993 A.2d 400. It is the State's burden to prove that a child is CHINS by a preponderance of the evidence. *Id.* ¶ 6.

---

[1] The State has not challenged the minor's standing to appeal from a CHINS adjudication, and we therefore do not address the issue.

■ ¶ 9. We agree that the record evidence was fundamentally insufficient to establish that J.H. was truant on the days alleged. The officer's description of the sheriff's department's general protocol may well have been sufficient to prove that he went to J.H.'s residence on each of the five days in question pursuant to a truancy report from the department dispatcher, although he did not specifically so testify. See V.R.E. 406 ("Evidence of . . . the routine practice of a person or organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the . . . routine practice."). There was no evidence from the school, however, as to its routine practice, and thus no basis to infer anything about what the school may have told the dispatcher on the days in question. The State called no witnesses from J.H.'s school to testify as to its policies and procedures governing whether, when, and how it reports a student truant, and adduced no school records to show that J.H. was actually absent without justification on the days in question.

¶ 10. We have held, to be sure, that it is not the State's burden to prove that a student was absent "without legal excuse" in the context of a criminal truancy action under 16 V.S.A. § 1127(b). In *State v. DeLaBruere*, 154 Vt. 237, 577 A.2d 254 (1990), we held that § 1127 must be read in pari materia with the compulsory attendance statute, 16 V.S.A. § 1121, and concluded that the exceptions from compulsory attendance set forth in the latter "are not part of the description of the offense but are instead affirmative defenses." *Id.* at 271-72, 577 A.2d at 273; see also *Fraser v. Sleeper*, 2007 VT 78, ¶ 8, 182 Vt. 206, 933 A.2d 246 (noting general rule that "when an exception is found in a separate clause or is clearly disconnected from the definition of the offense, it is the defendant's burden to claim it as an affirmative defense" (quotation omitted)).

■ ■ ¶ 11. The CHINS statute, in contrast, provides no separate catalogue of legal excuses from compulsory attendance, but rather makes the absence of "justification" a part of the violation itself. 33 V.S.A. § 5102(3)(D) (defining CHINS to mean a child who "is habitually and without justification truant from compulsory school attendance"); see *Fraser*, 2007 VT 78, ¶ 8 (observing that courts should look to "the language and structure of the statute" to determine whether provision constitutes an essential element of the offense). Thus, other courts construing

similar statutes have concluded that the government bears the burden of proving that a child was truant without justification or excuse. In *In re L.Z.*, 396 N.W.2d 214 (Minn. 1986), for example, the Minnesota Supreme Court considered a statute which defined "habitual truant" as a child "absenting himself from attendance at school without lawful excuse," construing it to require that the state prove the absence of lawful excuse. *Id.* at 221. There, as here, the state had argued that it was "extremely difficult to prove why a child is absent from school." *Id.* at 218. The court noted, however, that the initial "responsibility for providing a lawful excuse for a child is not on the school but on the parent." *Id.* at 221. Thus, the court reasoned that the government could meet its burden simply by introducing school records showing that the child was absent with no parental excuse on record; "this evidence permits an inference that the child's absence was . . . without lawful excuse." *Id.*

¶ 12. The court reached the same conclusion in *In re C.M.T.*, 2004 PA Super 418, 861 A.2d 348, under a Pennsylvania statute defining a "dependent" child in terms identical to our own as one "habitually and without justification truant from school." *Id.* ¶ 7. The court held that the "inclusion of the words 'without justification' . . . sets out an element of the offense that the Commonwealth [is] obliged to prove," observing that the statutory language was not "in the nature of an exception" to the compulsory attendance requirement "but a part of the definition of the conduct establishing dependency." *Id.* ¶ 11 n.2. In reliance on *In re L.Z.*, the court further concluded that the state could meet its burden simply by offering "school attendance records to establish that no excuse was received by the school for an absence." *Id.* ¶ 15.[2]

¶ 13. We find the reasoning of these courts to be persuasive, and hold that, under 33 V.S.A. § 5102(3)(D), "without justification" is an element of a CHINS determination based on truancy which the State must prove by a preponderance of the evidence. We similarly conclude that the State may meet this burden through

---

[2] Although we note that the Colorado Supreme Court reached a contrary conclusion in *People v. Y.D.M.*, 593 P.2d 1356, 1360 (Colo. 1979), it was construing a Colorado compulsory-attendance scheme which, like our own truancy provisions, sets forth separate statutory exceptions to the compulsory attendance requirement which were reasonably construed to be affirmative defenses.

properly admitted school records showing the child's unexcused absence. Inasmuch as the evidence here was plainly insufficient under this standard, we are compelled to conclude that the adjudication of CHINS based on truancy must be reversed.[3]

*Reversed.*

---

[3] Our holding renders it unnecessary to consider whether the evidence was sufficient to show that J.H. was "habitually" truant under the CHINS statute. We observe, however, that courts construing similar statutes have held that "habitually" in this context is not unconstitutionally vague, and may be shown by evidence of a consistent pattern of unexcused absences. See, e.g., *In re E.B.*, 287 N.W.2d 462, 464-65 (N.D. 1980) (holding that "habitually truant" provides an adequate "common-sense" standard to guide the court, and that six and a half days of absences without justification in a four-month period plus other excused absences demonstrated a "consistent pattern of truancy" in satisfaction of the statute); see also *Sheehan v. Scott*, 520 F.2d 825, 829-30 (7th Cir. 1975) (holding that "habitually truant" provision in Illinois statute was not unconstitutionally vague, and refusing "to interfere with the reasonable judgmental discretion" of school officials in applying it to child who was absent fourteen days in two month period); *Simmons v. State*, 371 N.E.2d 1316, 1320 (Ind. Ct. App. 1978) (agreeing with state's claim that child who was absent twenty-eight of sixty-two school days over period of several months "established a pattern sufficient to justify a finding" that she was habitually truant).