Reiber, C.J.
¶ 1. Mother appeals from a superior court order adjudicating the minors J.C. and T.F. to be children in need of care and supervision (CHINS). Mother contends that the evidence and findings fail to support the judgment, and that the court’s findings were conclusory and inadequate. We affirm.
¶ 2. This proceeding commenced with the filing of CHINS petitions in June 2014, based on reports and observations of social-service providers concerning mother’s care of the children during the preceding six months. At the time, mother was living with her child, J.C., who was almost five years old, her husband and their daughter, T.F., who was almost two years old, and her husband’s daughter K.P., who was then six years old. K.P. is the subject of a separate CHINS proceeding. The trial court held a merits hearing as to J.C. and T.F. in May 2015, and issued a written ruling in July 2015.
¶ 3. The facts may be summarized as follows. An in-home service provider with the Early Head Start program who visited the family on several occasions in May 2014 observed a number of cruel and abusive interactions between mother and her stepdaughter K.P. Mother told K.P. that “she didn’t want her anymore,” informed the Head Start provider that she wanted to paddle K.P. “until she bled,” admitted that she had not given K.P. anything to drink for two days to teach her a lesson for “stealing food from the refrigerator,” reported that she had made K.P. stand in a corner for hours, and stated that she “wantfed] to be the next one on T.V. for killing her kid K.P.”
¶ 4. Based on the Head Start provider’s report, a social worker with the Department for Children and Families also visited the home. She observed that mother appeared to be stressed, overwhelmed, and agitated throughout the visits, noted similarly cruel treatment of K.P, and also observed an incident in which mother grabbed J.C. by the arms and forced the child onto a couch. Mother testified that she regularly suffered from depression, and had been prescribed medication but was not taking it. Father testified about his own extensive history of drug abuse and *195 struggles to stay clean and sober. Although his work kept him away from the home for much of the time, he testified that he had no concerns about mother’s treatment of the children.
¶ 5. The court concluded that mother had emotionally and physically abused K.P., and further concluded that the evidence demonstrated mother’s general inability to properly care for J.C. and T.F. and her need for parenting education. The court noted father’s need for continued substance abuse treatment. Based on these conclusions, the court adjudicated both children to be CHINS, and set the matter for a disposition hearing. This appeal by mother followed.
¶ 6. When reviewing a CHINS adjudication, we will “uphold the court’s factual findings unless clearly erroneous and the court’s legal conclusions when supported by those findings.” In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508, 82 A.3d 1143.
¶ 7. A child is “in need of care or supervision” when, among other possible situations, he or she is “without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being.” 33 V.S.A. § 5102(8)(B). As we have explained, “[t]he focus of a CHINS proceeding is the welfare of the child, and therefore a court may adjudicate the child as CHINS even if the allegations are established as to one parent but not the other.” In re C.P., 2012 VT 100, ¶ 28, 193 Vt. 29, 71 A.3d 1142. The principal issue “is whether, given all of the circumstances, the child is without proper ‘parental’ care, such that the child’s well-being is threatened,” a “question of fact, . . . and each case must be determined on its own facts.” In re G.C., 170 Vt. 329, 334, 749 A.2d 28, 32 (2000) (quotation omitted). Because the critical focus in a CHINS proceeding is on the child’s well-being, the State is not required to demonstrate that the child has suffered actual harm, but rather is subject to a risk of harm. See In re L.M., 2014 VT 17, ¶ 29, 195 Vt. 637, 93 A.3d 553 (noting that State did not “need to establish actual harm” to show that child was CHINS); see also E.J.R. v. Young, 162 Vt. 219, 223, 646 A.2d 1284, 1287 (1994) (explaining that “[ajctual and completed harmful acts cannot be, and are not, a precondition to a CHINS finding”). It is equally well settled that “[t]he family court may rely on evidence of the treatment of a sibling in concluding that a child is a CHINS.” Young, 162 Vt. at 224, 646 A.2d at 1287; see also In re J.J.P., 168 Vt. 143, 148, 719 A.2d 394, 397 (1998) (“The *196 court may rely on evidence of a parent’s treatment of siblings to show a pattern of abuse and neglect, and a general inability to protect the children from harm.”).
¶ 8. Mother concedes that evidence of a parent’s treatment of a sibling may be relevant in deciding whether a child is CHINS. She contends, however, that such treatment “is not alone conclusive” and that the trial court here erred “when it concluded that treatment of a sibling alone, without any connection to the children subject to the CHINS petition, was sufficient to conclude those children are CHINS.”
¶ 9. The record does not support mother’s characterization of the court’s ruling or the evidentiary basis of its decision. As noted, the trial court concluded that mother’s cruel treatment of K.P. “also endanger[ed] the health and welfare of J.C. and T.F.” This conclusion found support in the testimony of the family’s DCF social worker, who testified at length about her observations of mother at home with all three children. The social worker observed that mother was generally “stressed out [and] overwhelmed”; that the apartment was “chaotic”; and that mother’s demeanor throughout the visit was “very agitated.” Although mother’s blatant and vicious cruelty was directed at K.P, the social worker also observed an incident in which mother, while “extremely stressed,” grabbed J.C.’s arms and pushed the child onto a couch with such force that the social worker “voiced to [mother] my concern for the way that she was handling her own daughter.” The social worker also recalled that, “[w]ith all three children . . . [mother] was very agitated,” and that mother readily acknowledged feeling overwhelmed by her circumstances.
¶ 10. In addition, a DCF investigator who visited the home several months before the filing of the CHINS petition recalled that mother had complained of J.C.’s “behavioral difficulties” and had admitted her “struggles to manage J.C.’s behaviors.” In her own testimony, mother acknowledged that she “struggle [d] with depression,” had difficulty finding counselors she “mesh[ed]” with, and went through periods where she “tend[ed] to fade away.”
¶ 11. The record thus does not support mother’s claim that the trial court relied solely on her treatment of K.P. in concluding that J.C. and T.F. were at risk. On the contrary, the record shows that mother’s cruelty occurred in circumstances where all three children were present and where — according to several disin *197 terested witnesses — she exhibited a high level of stress and agitation which manifested itself in at least one instance of physical aggression toward J.C. that caused concern and comment by the family’s DCF social worker. This was sufficient to support the court’s conclusion that her general conduct endangered the health and welfare of J.C. and T.F.
¶ 12. Mother also makes much of the court’s findings that she “singled out K.P. for disparate treatment” and was observed to “treat K.P. differently than the other children.” Mother maintains that these findings betray a “logical inconsistency” with the court’s subsequent conclusion that her behavior posed a risk to the other children. The argument is unpersuasive. The risk to J.C. and T.F. was plainly predicated on the agitated and unstable environment in which K.P.’s abuse occurred; finding that mother singled-out K.P. for particular abuse is not inconsistent with that determination.
¶ 13. Finally, mother asserts that the court’s findings are sparse and conclusory and fail to adequately explain the reasoning underlying its decision. CHINS orders must set forth findings sufficient to support a conclusion that the child is in need or care or supervision. In re M.C.P., 153 Vt. 275, 291, 571 A.2d 627, 636 (1989). The court’s specific findings as to J.C. and T.F. are indeed truncated, and its analysis would have been far stronger if it had cited the facts set forth earlier in its ruling to support its ultimate conclusion that the children were CHINS. We are satisfied, however, that the decision provides a minimally sufficient basis to understand the court’s reasoning, and to support its conclusion that the children were in need of care or supervision.

Affirmed.