NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 12

No. 2018-356

In re B.B., B.C., and B.B., Juveniles

Supreme Court

On Appeal from
Superior Court, Franklin Unit,
Family Division

January Term, 2019

Martin A. Maley, J.

Sarah R. Star, Attorney & Counselor at Law, P.C., Middlebury, for Appellant Mother.

Ashley A. Harriman, Franklin County Deputy State's Attorney, St. Albans, for Appellee.

Michael Rose, St. Albans, for Appellees Juveniles.

PRESENT: Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** Mother appeals an order concluding that her children were children in need of care or supervision (CHINS) due to educational neglect.[1] On appeal, mother argues that (1) the court erred in not requiring the State to demonstrate that the children's absences were without justification; (2) the evidence does not support the court's finding that missing school caused the children harm; (3) the existence of Individualized Education Plans (IEPs) for the two young children, who were not legally required to attend school, does not support a finding of

---

[1] The merits determination became appealable after the disposition order was issued. See 33 V.S.A. § 5315(g) (explaining that merits adjudication "is not a final order subject to appeal separate from the resulting disposition order").

educational neglect; and (4) the court erred in admitting the school attendance records. We affirm as to B.C. and reverse and remand the CHINS determinations as to Bo.B. and Br.B.

¶ 2.      The court found the following. In April 2018, the State filed a petition alleging that B.C., born in January 2007, Bo.B., born in May 2012, and Br.B., born in April 2013, were CHINS for lack of proper education necessary for their well-being. 33 V.S.A. § 5102(3)(B). At the time, B.C. was in fifth grade, Bo.B. was in kindergarten, and Br.B. was in preschool two days a week. Bo.B. and Br.B. had IEPs and received support services at school, including speech therapy. B.C. had been referred to an educational support team because she was not meeting certain achievement levels in her educational program. In prior years, there had been three educational neglect/truancy assessments involving B.C. The assistant principal of the children's school testified that the classroom teachers take daily attendance that is recorded in an electronic database from which reports can be generated. Absences are considered excused if a parent calls and declares that the student will not be attending. Over mother's objection, the court admitted computer-generated attendance reports for all three children, concluding that they were business records.

¶ 3.      The assistant principal was concerned because all three children had a significant number of absences from school and contacted mother to schedule a meeting. The assistant principal also made a referral to Northwest Counseling Services (NCSS) for both B.C. and Bo.B. for a home/school coordinator and a truancy specialist. The assistant principal explained that although Br.B. and Bo.B. were not required by law to attend school, the structure, routine, consistency, and social skills that children build in preschool and kindergarten are important for preparing them for first grade. In January 2018, the assistant principal reported to the Department for Children and Families (DCF) that B.C. had missed twenty-two days and Bo.B. had missed thirty-two days of school and all absences were unexcused.[2] Due to his absence from school,

---

[2]  By March 2018, B.C. and Bo.B. had missed thirty-eight and fifty days of school, respectively.

Bo.B. was not receiving speech therapy. DCF contacted mother, who asserted that the absences were occurring because she was not receiving sufficient support from the school, the children were often absent due to illness, and transportation was a barrier. When asked, mother did not appear to understand the details of Bo.B.'s IEP. DCF set up a plan to implement services through NCSS in March, however, mother cancelled the meeting.

¶ 4. The court found that the three children were CHINS due to the parents' inability to provide for the children's educational needs. The court found that the children's absences resulted in missed educational opportunities that put them at risk of harm, especially in light of their needs. The court did not credit mother's assertion that the school did not act appropriately to assist her. The court explained that the school had acted appropriately to provide mother services to address the children's needs, but mother rejected the services, further placing the children at risk of harm. The court acknowledged that the younger two children were not required to attend school by statute, but found that they were at risk of harm for two reasons. First, both younger children were on IEPs and were receiving services during school. Second, the older child had a pattern of excessive school absences, and the court determined that this was a pattern relevant to the younger children. Therefore, the court concluded that all three children were CHINS for educational neglect. Mother appeals.

¶ 5. A child is "in need of care or supervision" when, among other things, the child "is without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being." 33 V.S.A. § 5102(3)(B). The State has the burden of establishing by a preponderance of the evidence that a child is CHINS. Id. § 5315(a). "Because the critical focus in a CHINS proceeding is on the child's well-being, the State is not required to demonstrate that the child has suffered actual harm, but rather is subject to a risk of harm." In re J.C., 2016 VT 9, ¶ 7, 201 Vt. 192, 138 A.3d 830. "On review of the court's CHINS decision, we will uphold the court's findings of fact unless they are clearly erroneous; we will uphold the court's legal

conclusions where supported by its findings." In re M.L., 2010 VT 5, ¶ 8, 187 Vt. 291, 993 A.2d 400.

¶ 6.     We first address mother's argument that the State failed to prove that the children's absences were unjustified.  The State can demonstrate that a child is CHINS under one of four possibilities: abandonment, lack of proper parental care, beyond parental control, and truancy.  33 V.S.A.  § 5102(3)(A)-(D).     Mother's appeal raises the issue of the difference between demonstrating CHINS based on lack of proper parental care for education versus truancy.  In truancy cases, children are CHINS if they are "habitually and without justification truant from compulsory school attendance."  Id. § 5102(3)(D).  In these cases, the State has the burden of proving that absences are without justification by a preponderance of the evidence.  In re J.H., 2013 VT 31, ¶ 13, 193 Vt. 541, 70 A.3d 1054.  In truancy cases, under § 5102(3)(D), the State is not required to show the children are being harmed or at risk of harm.  In contrast, the State need not prove that absences were without justification to demonstrate educational neglect under § 5102(3)(B).  However, there is no presumption that chronic absence from school amounts to risk of harm.  In a CHINS based on educational neglect, the State must show that the children lack the education necessary for their well-being.  Because this is not a truancy case, the State was not required to demonstrate that the absences were unjustified, but it was required to show that the children lacked the education necessary for their well-being.

¶ 7.     Mother argues that the court erred in finding that the children were CHINS because she asserts that the evidence does not show the children's well-being was negatively impacted by missing school.  She claims that staying at home was best for the children's well-being in this case because the children were sick and B.C. suffers from depression and anxiety, stemming from being bullied at school.  Mother claims that the court essentially found that missing school is per se educational neglect without any finding that the absences harmed the children.

4

¶ 8.   When reviewing findings, we construe the evidence to support the findings if possible and "construe the findings to support the judgment if they may reasonably be so construed." In re M.O., 2015 VT 120, ¶ 7, 200 Vt. 384, 131 A.3d 738.  Because the CHINS proceeding focuses on the welfare of the child, the question is not whether the child suffered actual harm, but whether the child is at risk of harm. Id. ¶ 6.

¶ 9.   Evaluating the court's findings in this case is complicated by the fact that the CHINS proceeding involved three children and the trial court did not explicitly separate its findings as to each child.  Nonetheless, we conclude that the evidence supports the findings, which in turn support the court's conclusion that B.C.'s excessive absences from school and mother's failure to engage in solving the problems related to the absences created a risk of harm that B.C. was without the education necessary for her well-being pursuant to 33 V.S.A. § 5102(3)(B).  The court's decision was not based on an assumption that B.C.'s absences were automatically educational neglect, but on evidence particular to B.C.  The court relied on the testimony of the assistant principal and found that B.C. had excessive absences from school and had been referred to an Educational Support Team because she was not meeting certain levels in her education.[3]  The school was concerned about the absences, contacted mother, and made a referral to NCSS to address the causes, but mother rejected these services.  The court did not credit mother's explanations for B.C.'s absences.  The court emphasized that the children's absences alone did not make them CHINS; rather, it was the missed education "given their needs" and mother's failure to engage that created the risk of harm.  The evidence supports the court's finding that B.C. was receiving services to address areas where she was below priority curriculum standards and

---

[3]  Although the court did not explicitly link B.C.'s excessive absences to the referral for services, this is implicit from the context of the court's finding, which indicates that the referral was recent and discusses the absences in conjunction with the referral.  We adopt this inference of the evidence because it is the construction that supports the judgment.  See In re M.O., 2015 VT 120, ¶ 7 (findings will be construed to support judgment).

therefore it was important to be at school to get those services. The evidence also demonstrated that mother did not follow through or cooperate to engage in services to solve the excessive absences and to address the failure to achieve curriculum standards. The combination of B.C.'s excessive absences, her performance below academic standards, and mother's lack of engagement to rectify these issues created a risk of harm of educational neglect.

¶ 10. The analysis is different for Bo.B. and Br.B., however, because they are not required by law to attend school. The trial court relied on the testimony of the assistant principal that these children learned important skills at school, but there was no indication that a lack of these skills, such as early literacy and math and social skills, at a young age equated to lack of education necessary for the well-being. Although the evidence suggests that the younger two children would benefit from attending kindergarten and preschool, the Legislature has determined that children of this age are not required to attend school. The trial court also relied on the fact that the younger children were receiving services at school to address issues in their IEPs. However, by statute, services for non-school-age children are voluntary, and a parent's decision to refuse aid or discontinue services for a young child may not be used to presume neglect. 33 V.S.A. § 4701(a).[4] Here, the evidence was insufficient to demonstrate that Bo.B. and Br.B. were at risk of harm for educational neglect given that they were not required to attend school and mother could discontinue the services related to their IEPs without any presumption of neglect.

¶ 11. Mother's final argument is that the children's attendance records were inadmissible hearsay. The trial court has discretion in making evidentiary decisions and we review for an abuse of discretion. Gilman v. Towmotor Corp., 160 Vt. 116, 122, 621 A.2d 1260, 1263 (1992).

---

[4] Mother cited this statute for the first time in her reply brief. Nonetheless, we consider the impact of the statute because mother's principal brief raised the argument of whether a non-school-age child's placement on an IEP was insufficient to presume educational neglect. See Vt. Nat'l Bank v. Dowrick, 144 Vt. 504, 509, 481 A.2d 396, 399 (1984) (stating that issues raised for first time in reply brief will not be addressed).

6

¶ 12.    Vermont Rule of Evidence 803(6) excepts from the hearsay rule records or data, including compilations, "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make" the report.  The requirements of the rule must be shown "by the testimony of the custodian or other qualified witness."  V.R.E. 803(6).  At the hearing, mother's attorney objected to admission of the records on the ground that they could be introduced only through the testimony of the records custodian.  The court admitted the records under Rule 803(6), based on the testimony of the assistant principal, who explained that teachers take and input daily attendance into an electronic database, the data is collected, and then kept as part of the regular routine.  The trial court acted within its discretion in viewing the assistant principal as a qualified witness and admitting the records based on her testimony.

Affirmed as to B.C.; reversed and remanded as to Bo.B. and Br.B.

FOR THE COURT:

_____
Associate Justice

7