NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 34

No. 23-AP-017

In re J.N., Juvenile

Supreme Court

On Appeal from
Superior Court, Washington Unit,
Family Division

June Term, 2023

Michael J. Harris, J. (disposition/permanency orders); Scot L. Kline, J. (merits order)

Sarah R. Star, Middlebury, for Appellant Mother.

Kristin Gozzi, Washington County Senior Deputy State's Attorney, Barre, for Appellee State.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **WAPLES, J.** Mother appeals the family division's determination that daughter J.N. was a child in need of care or supervision (CHINS). We reverse.

¶ 2. J.N. was born in August 2013. On the eve of J.N.'s eighth birthday in August 2021, the State filed a petition alleging that J.N. was CHINS due to lack of proper parental care (CHINS-B) after an incident during which mother had dragged J.N. by her arms, causing bruises. The court transferred temporary custody to the Department for Children and Families (DCF).

¶ 3. A merits hearing was held over three days in November 2021 and January and June 2022. At the conclusion of the hearing, the court made the following oral findings. When the CHINS petition was filed, J.N. lived with her mother in Barre. Their home was safe and had adequate space, heat, and utilities, and mother was meeting J.N.'s everyday needs. J.N. had shown

physical aggression in the past and was working with a behavioral interventionist to improve her behaviors and coping skills.

¶ 4.    On August 5, 2021, J.N. was acting out at summer school and began to yell, push, and scratch the behavioral interventionist. The behavioral interventionist placed her in a "handle with care" restraint and J.N. calmed down. As a result of this incident, it was decided that J.N. would not go on a previously planned field trip the following day and would instead do a different activity.

¶ 5.    The next day at 9:30 a.m., two behavioral interventionists arrived to pick up J.N. at her home. At that point, mother informed J.N. that she would not be going on the field trip. J.N. became upset, threw her backpack, and hit a wall. Mother and J.N. screamed at each other. J.N. tried to block the door so the behavioral interventionist could not leave. Mother grabbed J.N. in a bear hug. J.N. got free and ran outside toward the street. Mother caught up to J.N and grabbed her by the arms. J.N. dropped to the ground. Mother then dragged J.N. back to their home about fifty feet across a concrete area, repeatedly jerking the child's arm and yelling at her. Mother eventually let go, and J.N. ran to the behavioral interventionists' car and got in. She was sobbing, shaking, and breathing heavily. She went to school, where she eventually settled down enough to be able to eat pizza and play outside. Photos taken of J.N.'s arms afterward showed grab marks.

¶ 6.    The court noted that mother had been convicted in 2017 of aggravated domestic assault and cruelty to a child under ten years old. These convictions arose from an incident in 2011 or 2012 where mother threw one of her other children across a room. The court found that the convictions showed a pattern of abuse or neglect. It then stated, "but even without those, the court finds, based on the single incident here, that the evidence is sufficient that mother inflicted, essentially, a physical punishment or response that was out of anger rather than for corrective purpose." It found that mother's response was excessive and unreasonable and therefore that J.N. was without proper parental care as of the date of the petition.

2

¶ 7. In December 2022, the court issued a disposition order that continued custody of J.N. with DCF and adopted a goal of reunification with mother by June 2023. The court denied mother's request for a conditional-custody order.[1] It stated that mother had not acknowledged that her pre-petition behavior contributed to J.N. entering custody, although she had taken many of the steps recommended by the case plan. It also noted that J.N. had displayed increasingly challenging behaviors since entering DCF custody, which had led to her being placed in a residential facility. This appeal followed.

¶ 8. On appeal, mother argues that the court's findings regarding the August 2021 incident cannot support a determination that J.N. was CHINS due to a lack of proper parental care. She argues that the State essentially used a CHINS-B petition to advance a claim of abuse, and that by accepting this framing, the court deprived her of notice and interpreted the statute in a manner that was unconstitutionally overbroad. "When reviewing a CHINS decision, we uphold the court's factual findings unless clearly erroneous and the court's legal conclusions when supported by those findings." In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508, 82 A.3d 1143. In this case, we agree that the court's findings cannot support its conclusion that J.N. was CHINS-B, and therefore reverse.

¶ 9. The juvenile-proceedings statute sets forth four different bases upon which the State may allege that a child is CHINS: (A) the child has been abandoned or abused by a parent, guardian, or custodian; (B) the child is without proper parental care; (C) the child is beyond parental control; or (D) the child is habitually truant from school. 33 V.S.A. § 5102(3)(A)-(D). In this case, the State alleged that J.N. was CHINS-B. That provision required the State to prove by a preponderance of the evidence that J.N. was "without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being." Id. §§ 5102(3)(B), 5315(a).

---

[1] The case record indicates that in April 2023, while this appeal was pending, the court issued a conditional-custody order transferring custody back to mother.

¶ 10.    The family division's findings in this case do not support its determination that the State met its burden of proving that J.N. was CHINS-B.  The family division relied on the definition of abuse set forth in 15 V.S.A. § 1101(1)(C) and 33 V.S.A. § 4912, which require a showing that the parent "(1) inflicted physical punishment out of anger rather than a corrective purpose, or (2) physically punished a child in an excessive, unreasonable, or cruel manner."[2] Wood ex rel. Eddy v. Eddy, 2003 VT 67, ¶ 13, 175 Vt. 608, 833 A.2d 1243 (mem.) (citation omitted).  It found that mother acted out of anger during the August 2021 incident and inflicted excessive and unreasonable punishment on J.N.  It concluded that, "based on that, the child actually incurred injury at the hands of mother, but also was subjected to a risk of harm, and therefore was without proper parental care as of the date of the petition in this case."

¶ 11.    The family division's reasoning, which was effectively an abuse analysis, stretches the CHINS-B definition too far.  The single incident of physical discipline in this case does not support the conclusion that J.N. was lacking care necessary for her well-being as required to support a neglect finding.  To the contrary: the court found that mother was meeting J.N.'s day-to-day needs and that J.N. was already receiving services for her behavioral issues.  The court did not find that mother failed to provide J.N. with necessary medical or mental-health care or that she routinely engaged in excessive physical discipline toward J.N.  The court also did not find, as

_____

[2]  In Wood ex rel. Eddy v. Eddy, we held that 15 V.S.A. § 1101(1)(C), which adopts the narrower definition of abuse to children provided in 33 V.S.A. § 4912, provides the sole definition of abuse relevant to relief-from-abuse proceedings concerning children.  2003 VT 67, ¶ 13, 175 Vt. 608, 833 A.2d 1243.  As we subsequently explained in In re M.K., § 4912 does not define "abuse" for purposes of CHINS proceedings alleging abuse under § 5102(3)(A).  2015 VT 8, ¶ 11, 198 Vt. 233, 114 A.3d 107.  In M.K., we reasoned that § 4912's definitions expressly applied to the subchapter governing reporting of child abuse for potential placement on the child-protection registry, which had different goals, functions, and procedures than the statutes governing juvenile proceedings.  Id.  However, § 4912 could provide guidance in determining what conduct amounted to abuse for purposes of § 5102(3)(A) (CHINS-A).  Id. ¶ 12.  We declined to adopt a specific definition of abuse for CHINS-A proceedings, but noted that definitions of abuse "generally refer to acts that cause—or create a real risk of causing—physical, emotional, mental, or sexual injury." Id.

suggested by the State, that the August 2021 incident demonstrated that mother was unable to properly meet J.N.'s unique developmental needs. Under these circumstances, the CHINS-B determination cannot stand.

¶ 12. The State argues that the CHINS-B definition "must be liberally construed." In re B.R., 2014 VT 37, ¶¶ 15-16, 196 Vt. 304, 97 A.3d 867; see also In re N.H., 135 Vt. 230, 234, 373 A.2d 851, 855 (1977) ("[A] statute providing the basis for determining who are neglected children should be liberally construed so as to aid the purpose of its enactment."). However, "even where principles of liberal construction are in play, legislative intent remains our polestar." In re Hopkins Certificate of Compliance, 2020 VT 47, ¶ 10 n.2, 212 Vt. 368, 237 A.3d 661. The Legislature has created four distinct bases for adjudicating a child to be CHINS. Each of these provisions requires different evidentiary support and they are not interchangeable. See, e.g., In re B.B., 2019 VT 12, ¶ 6, 209 Vt. 528, 208 A.3d 244 (explaining differences in evidence needed to demonstrate CHINS based on lack of proper parental care for education versus that needed to support truancy allegation). If we were to conclude, as the State urges, that § 5102(3)(B) can be satisfied solely with evidence of a single instance of excessive physical discipline, then § 5102(3)(A) would become unnecessary, since any case of child abuse could simply be charged as neglect. "We will not interpret a statute in a way that renders a significant part of it pure surplusage." Robes v. Town of Hartford, 161 Vt. 187, 193, 636 A.2d 342, 347 (1993).

¶ 13. The State asserts that there was other evidence in the record showing that the home environment was "tumultuous," and that mother parented J.N. in a manner that aggravated J.N.'s mental-health condition. It claims that this evidence supports a determination that J.N. was without proper parental care for her specific developmental needs. We have reviewed the record and the evidence about J.N.'s specific needs, the conditions in mother's home, or mother's parenting skills in general is extremely limited. But more importantly, the family division did not make any findings about or rely on the cited evidence in support of its decision. The State is essentially

5

inviting us to reweigh this evidence and make our own findings on appeal, which we will not do. In re M.M., 2015 VT 122, ¶ 12, 200 Vt. 540, 133 A.3d 379 (explaining that it is not this Court's role in appeal from CHINS determination "to second-guess the family court or to reweigh the evidence" (quotation omitted)).

¶ 14. Our conclusion that the merits order must be reversed is consistent with previous decisions in which we have declined to uphold a CHINS determination under a different theory than that charged by the State. In In re M.L., 2018 VT 32, 207 Vt. 128, 186 A.3d 618, we reversed the family division's determination that a child with significant mental-health issues was beyond parental control, or "CHINS-C," where the mother was unable to safely manage the child in her home but had arranged for her admission to the Brattleboro Retreat. We reasoned that the mother had maintained control over the child's care and ensured she was safe and protected in a supervised medical setting. Id. ¶¶ 19-20. We noted that the case was not charged as a CHINS-B case of parental neglect based on mother's failure to meet the child's medical needs. Id. ¶ 23. We explained that even if the evidence could have supported a CHINS-B determination, which it did not, "the State cannot use a CHINS–C petition to advance what is essentially a medical neglect argument focusing on whether mother's medical treatment planning is adequate to meet M.L.'s needs, rather than on whether M.L. is (or imminently will be) beyond mother's control." Id.

¶ 15. Similarly, in In re B.B., 155 Vt. 365, 369-70, 584 A.2d 1126, 1128-29 (1990), overruled on other grounds by In re D.D., 2013 VT 79, we reversed a CHINS-C determination, concluding that the evidence did not support the trial court's finding that the child was a runaway because her parents had given her permission to leave home to live with her aunt. We rejected the child's argument that we should uphold the CHINS determination because there was sufficient evidence of abuse in the record to support an alternative determination that she was CHINS-A. Id. We explained that we were "unwilling to reconstruct the State's case on a theory not relied upon in the petition and not accepted by the juvenile court," because doing so would require us to

6

reweigh the evidence on appeal and because the parents lacked notice of the new theory on which the child wished to rely. Id. at 370, 584 A.2d at 1128-29.

¶ 16. Like M.L. and B.B., the family division's findings in this case do not fit the theory charged by the State. To the extent that the State is asking us to affirm the CHINS determination based on a theory of abuse, we agree with mother that this would create a problem of notice. See State v. Christman, 135 Vt. 59, 60, 370 A.2d 624, 625 (1977) (explaining that in criminal proceeding, due process requirement of notice is met if "the complaint or other form of accusation of a criminal offense set forth charges with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable him to make intelligent preparation for his defense" (emphasis added)). The State could have alleged an alternative theory, but chose here to proceed under CHINS-B, and it would be unfair to mother to affirm the decision below on an entirely different basis than that presented to the family division. Compare In re B.B., 155 Vt. at 370, 584 A.2d at 1128-29 (declining to affirm CHINS determination on alternative basis not specifically charged by State), with In re R.M., 150 Vt. 59, 70, 549 A.2d 1050, 1057 (1988) (holding that parent received adequate notice of State's intent to rely on abuse allegations where petitions alleged child was CHINS due to both abuse and neglect). For these reasons, we reverse the family division's determination that J.N. was CHINS.[3]

Reversed.

FOR THE COURT:

_____
Associate Justice

---

[3] Mother also challenges the court's disposition order granting DCF custody. Because we are reversing the CHINS determination, we do not address mother's arguments concerning the disposition order. See 33 V.S.A. § 5315(f) (stating that if allegations in CHINS petition are not established, court shall dismiss petition and vacate any existing orders).