VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    24-AP-135



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2024

In re A.A., Juvenile (J.A., Father\*)

}  APPEALED FROM:
}
}  Superior Court, Chittenden Unit,
}  Family Division
}  CASE NO. 21-JV-00246
   Trial Judge: Michael J. Harris

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his residual parental rights in A.A.  We affirm.

The record indicates the following.  A.A. was born in October 2012.  The Department for Children and Families (DCF) became involved with this family in November 2020 when A.A.'s school reported his excessive absenteeism.  DCF accepted the report for educational neglect.  While working with the family informally, DCF received another report from mother's sister about inadequate heat and food and other concerns in parents' home, as well as parents' ongoing substance use.  Mother signed releases, and her treatment providers indicated that she was abusing cocaine.  DCF also learned that A.A. and his siblings were behind on recommended medical care.  DCF established a parenting plan, but parents did not engage in services and A.A. continued to miss school.

In February 2021, the State filed a petition alleging that A.A. was a child in need of care or supervision (CHINS).  Parents stipulated that A.A. was CHINS and the parties agreed to a conditional custody order (CCO) to parents.  Parents did not comply with the terms of the CCO, however, and A.A. continued to miss school.  While parents were initially engaged in the case plan, their engagement ceased by June 2023.  Parents did not respond to DCF's repeated attempts to contact them over several months, they were not engaged in services to secure housing, and a relative reported concerns that parents were again using substances.  The State moved to terminate parents' rights and, following a hearing, the court granted its request.

The court made findings on the record at the conclusion of the hearing, which it briefly summarized in a written order.  At the outset, it noted that it had heard considerable testimony from individuals with direct knowledge of the events and it also heard some hearsay evidence both via statements attributed to others and within documents submitted as exhibits.  The court found some of the hearsay reliable, including portions of the disposition reports and other items, identifying the factors it considered in evaluating reliability, and it considered this evidence in

reaching its conclusion. The court explained that the juvenile proceedings had been going on for about three years and there were two DCF employees who worked with the family during that time. Concerns for father revolved around housing, substance use, and criminal activity and there were action steps related to these issues. Parents struggled to meet the goals in the case plan, including a requirement that they meet with DCF on a regular basis and engage in services.

The court found that parents stagnated in their ability to parent. They failed to have consistent contact with DCF. They did not inform DCF when they obtained new phone or contact information. They did not respond to numerous messages left for them by the DCF case worker. The case worker had no communication with parents from mid-December 2022 through approximately mid-January 2023 and again between April 2023 and July 2023. Parents' behavior made it difficult or impossible to schedule meetings. Father continued to engage in criminal activity. Parents had minimal contact with A.A., which had a negative effect on him. Parents did not provide urine samples at DCF's request as required by their action plans. Father had not been engaged in the case plan since the summer of 2022, when father began testing positive for cocaine. Parents also lacked stable housing. They did not complete the necessary paperwork to obtain economic services for housing. They continued to lack transportation, which had contributed to the pre-petition medical neglect of their children.

A.A. had been in custody for more than three years. He was living with his maternal grandparents and doing well in their care. While parents made some progress early on, their progress had stagnated. As set forth above, they showed a lack of involvement and engagement with DCF and A.A. They failed to make progress in obtaining secure or safe housing. Both parents were facing criminal charges, and as of October 2023, father had pending cases in at least five dockets, one of which included felony charges of home-improvement fraud. Father had been on arrest-warrant status more than once. He faced possible incarceration. There were also indications of parents' ongoing substance use and lack of evidence regarding sustained sobriety. Based on these and other findings, the court found that parents had not addressed the issues of concern in the case plan, and they could not resume or assume parental duties within a reasonable time. The court then considered the statutory best-interests factors and concluded that they all supported termination of parents' rights. This appeal by father followed.

"Termination of residual parental rights at a modification hearing requires a two-step analysis." In re B.M., 165 Vt. 331, 335 (1996). First, the court must consider if there are changed circumstances that warrant modification of the existing disposition order. If so, the court must then consider whether termination of parental rights is in a child's best interests, guided by statutory criteria. "The critical factor is whether the natural parent will be able to resume parental duties within a reasonable period of time." Id. at 336. On appeal, we will affirm the trial court's findings unless they are clearly erroneous, and we will affirm its conclusions if supported by the findings. Id. at 340. Our role "is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion." In re S.B., 174 Vt. 427, 429 (2002) (mem.).

Father first argues that the court erred in relying on hearsay testimony from the DCF case worker concerning case notes and reports made by her predecessor in this case and hearsay statements that father made in DCF documents submitted as evidence. He complains that the court did not sufficiently explain in its decision why it deemed the hearsay reliable. Father asserts that he was prejudiced by the absence of specific findings because he alleges that some of the statements lack foundation or indicia of reliability.

2

Hearsay is admissible in termination proceedings.  See 33 V.S.A. § 5317(b) ("Hearsay may be admitted and may be relied on to the extent of its probative value.").  Father fails to show that he objected to any particular testimony or evidence on hearsay grounds below.  He did not challenge the admission of the State's exhibits.  Father failed to preserve this argument and we therefore do not address it.  See In re R.L., 148 Vt. 223, 228 (1987) (holding that "parents' failure to object to the introduction of hearsay at the disposition hearing served as a waiver of their claim that its use at that hearing was error"); see also In re S.B.L., 150 Vt. 294, 297 (1988) (explaining that appellant bears burden to show "how the lower court erred warranting reversal" and "[w]e will not comb the record searching for error").

Even if this argument had been preserved, we would reject it.  "When reviewing findings, we construe the evidence to support the findings if possible and construe the findings to support the judgment if they may reasonably be so construed."  In re B.B., 2019 VT 12, ¶ 8, 209 Vt. 528 (quotation omitted).  The court identified the hearsay evidence that it was considering, including portions of the disposition reports and "statements attributed to other persons or documents containing hearsay."  It cited the factors it considered in concluding that the hearsay evidence that it relied upon was reliable.  It did not need to make specific findings as to each individual hearsay statement in its decision, particularly given the absence of any objection to the admission of this evidence or argument below that it was unreliable.  As the State points out, moreover, much of the evidence that father appears to challenge relates to the procedural and background history of this proceeding and relates to a time period during which parents were making some progress.  The most recent DCF caseworker testified, based on her personal knowledge, to father's lack of engagement since 2022 in a variety of areas.  The record amply supports the court's conclusion that father had stagnated in his ability to parent and that termination of his rights was in the child's best interests.

Father next asserts that the court improperly required him to prove his fitness.  According to father, the court faulted him for failing to introduce evidence that he had obtained secure housing or employment.

The record does not support father's argument.  The court did not shift the burden of proof to father, it merely commented on the state of the evidence before it.  In re B.C., 169 Vt. 1, 14 (1999) ("In noting the absence of any credible evidence that grandmother could assume the role of parent, the court was merely commenting on the state of the evidence, not signaling that it was grandmother's burden to prove her fitness."), clarified on other grounds in In re C.P., 2012 VT 100, 193 Vt. 29.  Obtaining safe housing was one of the action steps for father in the case plan.  Father's lack of contact and engagement impeded his ability to achieve this goal.  The housing specialist who was referred to parents by DCF testified that by May 2023, parents were no longer working with her.  They did not complete the forms necessary to obtain economic services for housing.  The court found that parents had considerable supports for housing but failed to utilize them.  As of July 2023, parents were camping with a group of others.  That was the last information available about where parents were living.  Father had no contact with DCF for many months leading up to the termination hearing.  There had been no housing identified for DCF to evaluate as a possible home for A.A.  The evidence before the court supports the finding that father had not obtained secure housing as required by the case plan.

The court similarly did not shift the burden of proof to father regarding a lack of employment or income.  The court noted that father had been charged with home-improvement fraud and missed work in part to avoid law enforcement.  Father asserted that he was doing some roofing work but did not provide evidence to show that was the case, despite requests and

reminders. At the same time, the court noted that mother had requested financial help to buy shoes and that father was unable to post bail for his criminal charges. Parents did not provide employment verification as part of the housing application and neither parent had a car. This evidence led the court to doubt whether parents had a secure source of income. The court did not err in so finding. In any event, the finding about father's income formed a small part of the trial court's decision, which rested largely on father's disengagement from DCF and A.A. and other factors. As indicated above, the record here amply supports the court's termination decision. See In re B.M., 165 Vt. at 340 (recognizing that if the "court has made findings sufficient to support its [termination] decision, and those findings are supported by the record, we will affirm").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice