VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.    25-AP-217



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2025

In re J.D. and C.D., Juveniles
(S.D., Mother\*)

} APPEALED FROM:
}
} Superior Court, Bennington Unit,
} Family Division
} CASE NOS. 24-JV-01601 & 24-JV-01602
Trial Judge: Kerry Ann McDonald-Cady

In the above-entitled cause, the Clerk will enter:

Mother appeals a family division order adjudicating J.D. and C.D., born in July 2021 and March 2017, as children in need of care or supervision (CHINS), and a requirement in the resulting disposition for her to undergo a mental-health evaluation.  On appeal, mother argues that the merits decision was impermissibly based on abandonment and not supported by the evidence, and there was an insufficient basis to require a mental-health evaluation.  We affirm.

In December 2024, the Department for Children and Families (DCF) received a report from a mental-health specialist at the Bennington Police Department that mother was being charged with exploitation of a vulnerable adult.  The children were placed in DCF custody under an emergency care order.  The State subsequently filed a petition alleging J.D. and C.D. were CHINS for lack of proper parental care.

Following an evidentiary hearing, the court found the following.  Mother and the children had difficulty securing stable housing for a long period beginning in 2021.  They stayed in motels through emergency housing, or at short-term rentals in Vermont or New York paid for by mother's friends.  In December 2024, mother was traveling in a car with her children, her dog, several kittens, and a man, who owned the car and was identified by law enforcement as a vulnerable adult.  The group arrived in Manchester to look for housing, and several police officers observed them at a McDonald's.  Mother was inside the McDonald's with J.D. and the vulnerable adult.  C.D. was alone in the car sleeping on a pile of dirty clothes.  He was ill.  The car was dirty and full of miscellaneous items, including trash, food, and personal items.  There was a dog in the car, and there were kittens in the trunk, including one that was deceased.  J.D. had very dirty clothing and a saggy, wet diaper.  J.D. had scratches all over his arms and legs from the kittens, and his clothes were soaked in urine.

Mother was arrested at the McDonald's for exploitation of a vulnerable adult and taken to the Bennington Police Department for processing. Mother was unable to care for the children at that time. There was no additional parent identified that could provide care for the children. The children were transported to Southwestern Vermont Medical Center for medical clearance.

The court determined that the children experienced physical neglect, which impacted their safety and well-being due to the lack of housing and the dangerous and unsanitary condition of the car. Custody of the children remained with DCF and they were placed in foster care. Mother had regular contact with the children, and the goal was reunification.

Mother contested the proposed disposition case plan. Following a hearing, the court issued a disposition order with the following findings. Mother had extreme difficulty working with community service providers. Although mother attended parenting time, she was unwilling to participate in Family Time Coaching and declined to work with Easterseals for visitation. Mother's parent-child contact was supervised through a different organization, but her second home visit was delayed because mother placed unreasonable demands on the supervisor, and ultimately the organization ceased working with mother, effectively suspending her parenting time. Mother repeatedly contacted the DCF caseworker at all hours and appeared in person without an appointment. Mother complained about the children's attorney and court-appointed guardian ad litem. She also complained about the foster parents. The DCF caseworker had not experienced that level of animosity from other parents and was concerned mother had untreated mental-health needs. Mother completed a mental-health assessment and self-reported that she had no mental-health needs. While the case was pending, mother obtained safe and stable housing and reliable transportation. She also completed a parenting program and no longer had contact with the vulnerable adult. Mother's views of the service providers and DCF were unfounded, and her oppositional behavior was the reason for the delay in reunifying with the children.

Based on these findings, the court found that the children's best interests favored living with mother and returning to her care under a conditional custody order. The court found that children loved mother and she loved them. Mother was attuned to their medical needs and supported their education. By obtaining safe and stable housing, mother had ameliorated the safety concern that was the primary reason the children went into custody. The court was concerned, however, about mother's inability to work with service providers effectively and imposed conditions requiring mother to, among other things, work cooperatively with DCF and service providers, sign releases, and obtain a psychological evaluation to determine any untreated mental-health needs. Mother appeals.

On appeal, mother first argues that the court erred in finding the children were CHINS. A child may be adjudicated as "in need of care or supervision" under four possible bases. 33 V.S.A. § 5102(3). Here, the State alleged that the children were "without proper parental care or subsistence, education, medical, or other care necessary for [their] well-being." Id. § 5102(3)(B). The State must prove by a preponderance of the evidence that a child is CHINS. Id. § 5315(a).

Mother claims that the family division rested its CHINS determination on the fact that she was unavailable to parent due to her arrest, and this was impermissible because the State chose not to allege abandonment in the petition. See 33 V.S.A. § 5102(3)(A) (providing abandonment as alternate basis for CHINS determination). Mother also argues that the evidence was insufficient to support the court's determination that the children lacked proper parental

care. Mother argues that she was experiencing poverty but that she was able to care for the children. She asserts that the dirty car and soiled diaper were insufficient to demonstrate neglect.

The record does not support either argument. The court's decision reflects that the court did not base its CHINS determination on a finding that the children were abandoned. Although the court noted that mother had been arrested and was unable to care for the children, it specifically found that the children were without proper parental care because their lack of housing and the unsanitary condition of the vehicle amounted to physical neglect of the children and impacted their safety and well-being. This situation differs from In re J.N., 2023 VT 34, ¶ 11, 218 Vt. 137, which mother relies on, where the State did not allege CHINS based on abuse, but the court found CHINS due to a "single incident of physical discipline," and made no findings regarding the mother's failure to provide the child with necessary care or support. In contrast, here, mother's unavailability to parent was not central to the court's finding, and the court made many findings regarding lack of proper parental care.

Therefore, we turn to mother's contention that the CHINS finding is not supported because the facts as found were not severe enough to support a finding of harm or risk of harm. On appeal, this Court "will uphold the court's findings of fact unless they are clearly erroneous; we will uphold the court's legal conclusions where supported by its findings." In re M.L., 2010 VT 5, ¶ 8, 187 Vt. 291.

The evidence demonstrated the following. The children had experienced housing instability for some time. They were staying in a car that belonged to an individual identified as a vulnerable adult. The car was full of miscellaneous items and contained garbage, children's clothing, a dog, and several cats, including one that was deceased. The children's clothing was soiled beyond normal wear, J.D.'s diaper and clothing were soaked in urine, and C.D. was ill. These findings are sufficient to support the court's determination that the children's safety and well-being were at risk, and they were therefore CHINS. "[T]he focus of a CHINS proceeding is the welfare of the child." In re B.R., 2014 VT 37, ¶ 13, 196 Vt. 304 (quotation omitted). The statute must be "liberally construed" to effectuate the purpose of protecting children. Id. ¶ 15. "Because the critical focus in a CHINS proceeding is on the child's well-being, the State is not required to demonstrate that the child has suffered actual harm, but rather is subject to a risk of harm." In re J.C., 2016 VT 9, ¶ 7, 201 Vt. 192. The findings here were not simply that mother was impoverished and in "less than optimal conditions," as mother asserts. The court's decision was well supported by evidence demonstrating physical neglect and risk of further harm given the children's living conditions. See In re L.M., 2014 VT 17, ¶ 29, 195 Vt. 637 (affirming CHINS determination based on finding that father's longstanding drug addiction, lack of housing, and failure to follow recommendations for help presented risk of harm).

Finally, mother contends that there was no basis for the court to require mother to undergo an additional mental-health examination as part of the disposition order. At disposition, the standard of proof is preponderance of the evidence where, as here, termination is not sought. 33 V.S.A. § 5317(c). A disposition order must be in the children's best interests and the court may impose conditions in an order returning custody to a parent. Id. § 5318(a), (a)(1). Mother contends that she already completed a mental-health evaluation and that her adversarial relationship with DCF was not a sufficient reason to require a mental-health examination.

The record here supports the court's decision to impose this condition in the disposition order. Mother points to the fact that she completed a mental-health assessment, but this was based on her own self-reporting. The evidence demonstrated that mother had difficulty working

with DCF and made complaints about many organizations and individuals that worked with her during the time the children were in custody, including the children's attorney, the guardian ad litem, the foster parents, the visit supervisor, and DCF. The court found that mother's concerns about these individuals were unfounded and that her opposition impeded progress toward reunification. Although the court indicated that there were no immediate safety risks for the children, mother's difficultly cooperating with service providers and mother's oppositional behavior toward DCF, Easterseals, and the visit supervisor, resulted in conflicts that prevented them from supporting her. The court imposed the condition to identify untreated mental-health needs to allow DCF to work more collaboratively with mother. This was a legitimate concern based on mother's past behavior, and facilitating a better relationship would be in the children's best interests because it would support the goal of reunification.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice

4