VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-441

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JUNE TERM,   2026

In re L.M., L.M., L.M., Juveniles      }
(M.C., Mother\*)      }
     }
     }
     }
     }
     }

APPEALED FROM:

Superior Court, Caledonia Unit,
Family Division
CASE NOS. 25-JV-00281, 25-JV-00282 &
           25-JV-00283
Trial Judge: Bonnie J. Badgewick

In the above-entitled cause, the Clerk will enter:

Mother appeals the court's order adjudicating L.M., L.M., and L.M., born in October 2018, June 2020, and January 2022, children in need of care or supervision (CHINS).  On appeal, mother argues that the court's findings were insufficient to support a CHINS determination.  We affirm.

The record demonstrates the following.  In February 2025, the State filed a petition alleging that L.M., L.M., and L.M. were CHINS due to lack of proper parental care.  At the time, the children were in mother's sole care.  The affidavit in support of the petition explained that the children were at risk of harm due to mother's use of illicit substances, the children's exposure to unsafe people in the home using illicit substances while caring for the children, and mother's unwillingness to cooperate with the Department for Children and Families (DCF) to create a safety plan.

The court held a contested merits hearing over two days at which a DCF supervisor, a DCF family services worker, a Lyndonville police officer, and the children's father testified. Based on the testimony, the court found the following.  Before this case began, DCF had recently closed a case involving mother that concerned her substance use and her ability to safely care for the children.  In February 2025, DCF received a report of substance misuse in the home, the presence of unsafe people, and substances being accessible to the children.  DCF attempted to reach out to mother, but she was unwilling to engage.  A DCF worker made an unannounced visit to the home and was greeted by one of the children.  Mother was not present.  There were

two individuals at the house with the children, including one who had an open DCF matter due to concerns about substance use. Mother was contacted and returned several hours later with another man. The DCF worker observed that mother was slurring her words and appeared disconnected. The DCF worker also observed that mother's hygiene and weight had deteriorated. The DCF worker was concerned and requested that mother engage in safety planning. Mother agreed to allow the children to be cared for by grandmother. Mother refused, however, to sign a formal safety plan, and after a week, picked the children up from grandmother's home. DCF made multiple attempts to communicate with mother, including again visiting the home. The DCF worker was met by one of the children at the door. Mother was home, but she would not allow the DCF worker to assess the children or to view the interior of the home. She reported that she had been drinking more than usual but did not disclose other substance use.

A Lyndonville police officer also testified regarding his observations of mother while involved in drug investigations. He was able to identify mother and describe her vehicle. He observed mother's vehicle at a house linked to drug activity twelve times in six months.

Based on these findings, the court found that the children were at risk of harm due to lack of proper parental care. The court explained that the presence of unsafe caregivers, the concerns about mother's substance use, and mother's refusal to participate in safety planning all created risks for the young children. Mother appealed.

The focus of a CHINS proceeding is the children's welfare. In re B.R., 2014 VT 37, ¶ 13, 196 Vt. 304. The State has the burden of proving that a child is CHINS by a preponderance of the evidence. Id.; see 33 V.S.A. § 5315(a). Here, the State alleged that the children were CHINS because they were "without proper parental care or subsistence, education, medical, or other care necessary for [their] well-being." 33 V.S.A. § 5102(3)(B). In assessing whether the children were without proper parental care, "the circumstances leading up to the filing of the CHINS petition are relevant in the court's assessment." In re L.M., 2014 VT 17, ¶ 20, 195 Vt. 637. The court may also "draw upon its own common sense and experience." Id. ¶ 30 (quotation omitted). On appeal, this Court upholds the family court's factual findings unless they are clearly erroneous and the court's legal conclusions when supported by those findings. In re A.O., 2023 VT 54, ¶ 9, 218 Vt. 464.

On appeal, mother does not challenge the sufficiency of the evidence to support the findings; rather, she argues that the court's findings were insufficient to support a CHINS determination. Mother contends that the court focused heavily on whether mother was cooperating with DCF to create a safety plan instead of on the actual safety of the children at the time the CHINS petition was filed. See id. ¶ 17 (explaining that parent's reluctance to engage with DCF may be relevant to CHINS but "is not by itself sufficient to support a finding that the children were without proper parental care"). Mother contends that by the time the CHINS petition was filed, she had mitigated the concerns about the houseguest and there was no evidence that she was using substances. Mother asserts that DCF had no evidence that the children were not being taken care of adequately by mother, asserting that they were fed and clean.

2

The record here supports the court's findings, which in turn support its conclusion that the juveniles were CHINS because there was a risk of harm. See In re J.C., 2016 VT 9, ¶ 7, 201 Vt. 192 ("Because the critical focus in a CHINS proceeding is on the child's well-being, the State is not required to demonstrate that the child has suffered actual harm, but rather is subject to a risk of harm."). The court's focus on mother's lack of cooperation with DCF was appropriate under the circumstances of the case and was not the sole basis for the court's finding, as mother asserts. As the family court recounted, DCF was concerned about the family due to reports that there were regulated substances in the home, the children were being cared for by unsafe individuals who also lived in the home, and drugs and paraphernalia were accessible to the children. Upon visiting the home, DCF observed unsafe individuals caring for the children and also saw mother exhibiting signs of substance use. When DCF attempted to engage with mother to assess the situation, she refused to participate. Although mother initially agreed to have grandmother care for the children, she then removed them from grandmother's care. DCF again visited the home, but mother would not permit access to the children to assess their health, hygiene, or welfare, and would not cooperate in any safety planning. Mother asserts that the children were all well cared for, but her refusal to allow DCF access to the children prevented DCF from assessing the living conditions and the children's health and welfare. These facts all presented risks to the children and provided sufficient grounds to support the court's assessment that the children were CHINS.*

Mother also contends that there was no direct evidence of drug use, and the family court erred in relying on evidence that mother visited a home linked to drug activity because there was no link between her visits and harm to the children and the evidence showed mother's visits to the home occurred after the CHINS petition was filed. See In re M.L., 2018 VT 32, ¶ 16, 207 Vt. 128 (explaining that CHINS petition is focused "on the circumstances at the time the State filed the petition").

First, although there was no direct evidence of mother's drug use, there was circumstantial evidence. This included DCF's past case with mother based on substance misuse, the report to DCF, and the DCF worker's observations of mother's behavior and appearance when the DCF worker visited the home.

In addition, there was the officer's testimony that mother made twelve visits to a known drug house within a six-month period. Although the officer testified to facts discovered from a search of that house after the CHINS petition was filed, the trial court limited its findings to facts known prior to the filing of the CHINS petition. At the hearing in July 2025, the officer testified that he had known mother for about ten months. He said that a search warrant was executed on the house in March 2025 based on observations from the prior six months. Although the officer

---

* Mother argues that the court erred in finding mother violated a safety plan by removing the children from grandmother's care because there was no formal safety plan in place. Although the court indicated that mother failed "to abide with [the] safety plan," the court did not base the CHINS finding on a violation of the informal safety plan, as mother alleges. The court's decision reflects that it was legitimately concerned about drug use and lack of proper supervision, and this, along with mother's refusal to engage with DCF, created the risk of harm in this case.

also described items linking mother to the house, which were found after the search warrant was executed, the court did not rely on this information. The court solely relied on the fact that mother made multiple visits to the house in the months preceding the filing of the CHINS petition. Therefore, there was no error.

Affirmed.

BY THE COURT:

_____
Nancy J. Waples, Associate Justice


_____
Christina E. Nolan, Associate Justice


_____
Michael P. Drescher, Associate Justice